## Daniel Dougherty's Appeal.

---

## William G. Mintzer's Estate.

In proceedings at the instance of one of several *cestuis que trust* to procure the removal of a trustee inadvertently appointed by the orphans' court without the consent of the petitioner, the expense of counsel fees incurred by the trustee in trying to maintain his position is not to be borne by the trust estate.

(Argued March 25, 1887.   Decided April 4, 1887.)

July Term, 1886, No. 193, E. D., before MERCUR, Ch. J., GORDON, PAXSON, TRUNKEY, GREEN, and CLARK, JJ. Appeal from a decree of the Orphans' Court of Philadelphia County confirming the adjudication of a trustee's account. Affirmed.

The facts as they appeared at the audit of the account of the Guarantee Trust & Safe Deposit Company, trustee of the estate of William G. Mintzer, deceased, were stated by PENROSE, J., in his adjudication as follows:

The accountant was appointed trustee upon the petition of George W. Mintzer, October 19, 1883. Alexander Thackara, the surviving trustee under the will of the testator, had embezzled a large portion of the assets of the trust estate, and had ab-

sconded. The preservation of what was left required prompt action; and the appointment was made under the provisions of the act of May 1, 1861 (Purdon, 560, 561), relating to the removal of delinquent trustees, which permit the court or the judges in vacation, if the case shall require despatch, to remove such trustee and appoint some suitable person to discharge such trust, upon such security as the court may require, and shall moreover order and compel such trustee to deliver over and pay to his successor all and every the goods, chattels, and property, money, estate, or effects in hands.

Nearly six months after this, a petition was presented by Sarah A. Lancaster, one of the persons entitled to receive the income of the estate for life, asking that the appointment so made should be revoked, on the ground that she had not been consulted with regard to it, and had not joined in the petition. The court being of opinion that the joinder of all parties in interest was unnecessary under the act of 1861, since to require it might in many cases defeat the object of the act; and being of opinion, moreover, that the assent of the parties, if required, might be inferred from their acquiescence for so long a period after the appointment was made, refused to vacate it, especially as George W. Mintzer, at whose instance the appointment was made, and Mary D. Mintzer, who concurred in it, constituted a majority of the tenants for life. The supreme court, however, upon appeal, not regarding the fact just stated, decided that (under the act of April 9, 1868, relating to the city of Philadelphia, which gives to the *cestuis que trust,* or a majority of them having the life estate, the right to choose or elect trustees to execute the trust) an appointment without notice to all of the parties in interest was improper, and the decree by which it was made was, on the 15th of February, 1886, reversed, the appellee being directed to pay the costs out of the trust moneys in its hands.

After this, upon the petition of the majority of the persons entitled to the income of the estate, the court appointed the Fidelity Trust Company; and the functions of the accountant having thus ceased, the present account showing the administration of the trust estate by it has been filed.

The account was admitted to be correct except as to the charge of commissions on income collected after the appointment of the Fidelity Trust Company; the charge of commissions on princi-

pal and the credits in the principal account, under the dates of April 2, April 21, and November 2, 1885, and January 26, 1886, for $4, $13.75, $35, and $52, respectively.

The credit for $4 was duly vouched. It was for witness fees paid to a witness in attendance on behalf of the estate at the audit of the first account. The objection to the credit for $13.75 was that the paper book for which the payment was made was repeated in that for which the $52 were paid, and its inclusion was the ground of objection to the item of $52. It appeared, however, that Mr. Dougherty, having prepared his paper book soon after the appeal of Sarah A. Lancaster was taken, was of opinion at a later date that a fuller presentation of the case of the appellees was desirable. He therefore printed a second book, embracing in it all that appeared in the first one. This, while adding somewhat to the cost of printing (the amount was but $13.75) was manifestly an advantage, since one complete book would be much more likely to receive the attention of the court for which it was intended than two imperfect ones.

The credit of $35 was for the services of a stenographer in a proceeding involving the interests of the estate, before John Scholay, Esq., as master. The credit was duly vouched, and no reason was given why it should not be allowed. The exceptions to these credits are overruled.

The exception to the commissions on income collected after the appointment of the present trustee falls in consequence of an agreement that the balance of income, shown by the account and collected since it was filed, should be awarded directly to the persons entitled under will of the testator, without passing into the hands of the new trustee.

The commissions on principal were excepted to, first, because the appointment of the accountant had been revoked by the supreme court; and second, because the rate charged was excessive.

As to the first ground of objection, it was contended by Mr. Scanlan that the appointment, having been decided by the court of final resort to have been improperly made, must be regarded as void *ab initio;* the illegality was simply declared by the court, but it existed from the outset; and the person or corporation assuming to act by virtue of such appointment is to be treated as a trustee *de son tort,* entitled, of course, to no commissions or any advantage arising from its own wrong. The argument is

a plausible one, but the answer is that given by Mr. Hanson : the decree of a court of competent jurisdiction is valid until reversed or set aside; and persons acting in pursuance of it are entitled to its protection.   Any other doctrine would paralyze the inferior courts, and make their decrees inoperative until they had passed in review before the highest court.   See Menges v. Dentler, 33 Pa. 495, 75 Am. Dec. 616; Geddes v. Brown, 5 Phila. 180.

The only remaining question, therefore, is as to the rate of commission upon principal.   Accountant has charged 3 per cent upon the principal of the general estate, and 2 per cent upon that part belonging to the trust for Mary D. Chester.   From the testimony of Mr. Winship with regard to the services rendered by the accountant, it appears that some of them were before the appointment of the trustee and while the company was acting as guardian.   These cover the period from June 9, 1883, to October 16, 1883. Of the remaining services, many of them related to the income of the estate, and cannot be considered in fixing the amount of compensation to be allowed from principal. The trouble with regard to the collection of the estate devolved chiefly upon counsel, to whom an allowance therefor was made by the adjudication of the former account.

It was said in Spangler's Estate, 21 Pa. 335, that the compensation of trustees must, ordinarily, come out of the income of the fund.   This, however, is not a fixed rule, and the principal will be made liable where the income is inadequate, as in Biddle's Appeal, 83 Pa. 340, 24 Am. Rep. 183; Twaddell's Appeal, 81* Pa. 221; Lukens's Appeal, 47 Pa. 356.

But the rate of compensation as a trustee is not that allowed an executor or administrator, whose duty requires the disbursement as well as the collection and care of the funds of the estate. A trustee, too, has not the same responsibility as an executor. The estate usually is already invested, and charges cannot be made without the permission of the court.   See Bayard v. Farmers' & M. Bank, 52 Pa. 232.

In Twaddell's Appeal, for care of real estate, converted by the terms of the will, but taken by the parties in interest as land, worth at least $100,000, and under the charge of the trustee for over fifteen years, the allowance was $1,000, or 1 per cent.   In Biddle's Appeal the estate was valued at $204,000, and the al-

lowance for taking care of it for nineteen years was $2,000, a little less than 1 per cent.

In Lukens' Appeal, 1½ per cent was allowed, the amount of the estate not being stated by the reporter.

The allowance asked for in Biddle's Appeal was 3 per cent upon the value of the trust estate, but the auditing judge, O'BRIEN, J., whose action in this respect was sustained by the supreme court, fixed it at the sum above mentioned.

In the present case the total principal included in the account is $44,214, some part of which, although how much does not appear, had to be invested by the accountant; and in view of the authorities referred to, and under all the circumstances of the case, the auditing judge is of opinion that an allowance of $600 out of the principal, with the commissions upon income $323.91, and the commission on income allowed in the previous account will sufficiently compensate the services rendered by the accountant, and do no injustice to the beneficial owners of the estate. The allowance will be made accordingly.

Mr. Hanson, on behalf of Daniel Dougherty, Esq., asked for an allowance of $500 for professional services rendered the estate from April, 1885, to February, 1886.

The allowance for professional services made by the adjudication of the former account was intended to cover all services to that date, including services with regard to exceptions which might be filed to the adjudication. Since that time the only services, except such as affected the interests of individual clients of Mr. Dougherty, were in a proceeding before a master, relative to a mortgage claimed as the property of the estate, but found to have been regularly assigned to —— Tuck, and in the appeal of Sarah A. Lancaster, which resulted in the reversal of the decree appointing the accountant trustee.

It was contended by Mr. Scanlan that there could be no allowance at all for counsel fees, and that the case was entirely analogous to that of an issue *devisavit vel non;* but this overlooked the very important difference which results from the fact that the accountant was acting under the authority of a decree presumed to have been properly entered, and valid until reversed. In resisting the attack upon this decree, the accountant was entitled to the assistance of counsel, and counsel so employed would, of course, be entitled to compensation, which, in

the absence of misconduct on the part of the trustee, must, necessarily, come out of the trust estate.

The only question, therefore, is as to the amount to be allowed. Hon. F. C. Brewster, who was called as a witness as to the value of the services, basing his estimate upon the testimony of Mr. Winship as to what had been done by counsel, was of opinion that $500 was a proper and not unreasonable sum; but in this estimate were included services compensated by the allowance made by the former adjudication—the argument of exceptions to such adjudication, and also services rendered in matters not attending the general estate but relating to controversies between George W. Mintzer and his wife, the latter being the especial client of Mr. Dougherty.

In the opinion of the auditing judge it would not be proper to allow from the general estate more than $100 for services in the matter of the Tuck mortgage, and $200 for services with reference to the appeals of Sarah A. Lancaster *et al.* For anything beyond this the individual client must be looked to.

The balance of income held by the accountant as
    shown by the general account, as filed, is......$7,963 50
Add balance as per supplemental account........  562 97
 

The amount .................................$8,526 47
less payments in distribution heretofore made is awarded to the persons entitled under the will of the testator, according to their respective interests. A schedule of distribution will be prepared by counsel for the accountant, which, when approved, will be annexed and made part of this adjudication.

Upon the confirmation of this adjudication, with modifications, the following opinion was delivered by ASHMAN, J.:

The facts spread upon the record and conceded by the parties required the summary dismissal of the trustee and the appointment of another, and the form of the petition for the removal and substitution probably escaped scrutiny because it was supposed to conform to the facts. It was instead framed under the act of April 9, 1868 (Purdon's Digest, 1658), and the supreme court thereupon decided that an appointment under that act, without notice to all parties in interest, was void. Lancaster's Appeal, 111 Pa. 524, 2 Cent. Rep. 350, 4 Atl. 333.

This decision cuts up the title by which the substituted trus-

tees have assumed to act; and unless their title had some vitality by force of the original decree and pending its reversal it also destroys their right to compensation. The question does not necessarily arise respecting their claim to commissions upon principal; the rule which may be safely deduced from the cases being that commissions upon the corpus of a trust estate are never allowable except when the fund is in a course of distribution. The reason is inherent in the nature of a trust; its purpose is to preserve, and it may be of unlimited duration, while that of an administration is to divide and implies despatch; hence, if commissions upon the capital are awarded to the successive trustees who may be called to its management, the fund instead of being kept intact may be absorbed in the payment of its custodians. The purpose of the rule is not stated in these terms, in the cases, among which may be cited; Hemphill's Appeal, 18 Pa. 303; Spangler's Estate, 21 Pa. 335; Osterbaugh's Estate, 39 Phila. Leg. Int. 130; Dixon v. Homer, 2 Met. 420; but it is implied by their holding that commissions to trustees are payable out of income, and can be awarded out of principal, if at all, only upon the final settlement of the estate. If an exception exists and a retiring trustee may claim commissions upon the capital of a fund, while the trust is still active, it must be upon proof that some extraordinary service has been rendered.

The evidence in this instance points the other way, the fund being invested in mortgages and real estate and retaining, with a trifling exception, the shape in which it was left by the testator.

These cases and the policy upon which they are founded compel us to sustain the exceptions which have been taken to the allowance of commissions upon principal. The right to commissions upon income which is conceded by all the authorities was disputed here solely on the ground that the trustees had no color of title to their office. It was charged that they stood upon the plane of a trustee *de son tort* of whom the law will take no notice, except to charge him, and whom it certainly will not compensate for his wrong doing. 3 Wms. Exrs. 2019.

The supposed analogy, however, is not borne out by the facts. The accountants were placed in the trust by no agency of their own, but under a decree, on the contrary, which was procured by a majority of the parties having a stake in the fund. There

is reason in the rule which requires suitors to do equity when they ask equity; and the exceptants should pay for the benefit which they stand ready to receive and which was rendered in good faith by the accountants. The same principle applies to the allowance of counsel fees in the matter of the Tuck mortgage, which the trustees honestly regarded as an asset of the estate and which they sought to reduce into possession. But the exception to the claim for expenses incurred in resisting the proceedings to vacate the appointment is undoubtedly valid. The contest was between the trustees and certain of the *cestuis que trust,* and the estate itself was not a party.

That it is not liable in such a case for the expenses of the litigation is abundantly clear. Worrell's Appeal, 23 Pa. 44; Bickham v. Smith, 55 Pa. 335; Rankin's Appeal, 10 W. N. C. 235; Sheetz's Appeal, 100 Pa. 197.

From the decree entered in accordance with this opinion this appeal was taken.

The assignment of error specified the refusal of the court to allow counsel fees in the appeal of Sarah A. Lancaster to the appellant as counsel for the Guarantee Trust & Safe Deposit Company.

*D. Webster* and *Hunn Hanson,* for appellant.—A trustee is the sentinel or guard over the funds of the trust estate. It is his duty to the estate to remain at his post, and equally his duty in the interest of the trust to take the necessary steps and means to maintain his position. If by legal proceedings he is sought to be displaced, he is bound to use legal skill to resist such an attempt; and whenever it is the duty of a trustee to employ professional skill in behalf of the trust, then the funds of the estate are answerable to pay for such employment. Heckert's Appeal, 24 Pa. 486; Lowrie's Appeal, 1 Grant, Cas. 373; Myers's Appeal, 62 Pa. 108; Perkins's Appeal, 108 Pa. 316, 56 Am. Rep. 208.

In this case the trustee was appointed by the orphans' court; and whether it was sought to be displaced by a stranger or by one of the *cestuis que trust,* it was equally incumbent upon it to maintain the trusteeship until, in an orderly, legal way, the action of the orphans' court should be overruled.

*John A. Scanlan,* for appellees.—The contest was between

the trustee and certain of the *cestuis que trust*. The estate itself was not a party, and is not liable for the expenses of the litigation. Worrell's Appeal, 23 Pa. 44; Bickham v. Smith, 55 Pa. 335; Rankin's Appeal, 10 W. N. C. 235; Sheetz's Appeal, 100 Pa. 197.

Although a trustee should be allowed the expense of litigation carried on in good faith for the trust, yet after he has been called upon to surrender it to the *cestui que trust,* he should not be allowed the cost of defending his position in refusing to do so. Towle v. Mack, 2 Vt. 19.

Counsel fees are not allowed when paid to sustain the position of the executor against those beneficially interested. Villard v. Robert, 1 Strobh. Eq. 393; Garrett v. Garrett, 2 Strobh. Eq. 272; Wham v. Love, Rice, Eq. 51.

It has no authority to decree counsel fees in any case unless they are incurred as expenses of administration. 4 Rich. Eq. 41.

Nor for services performed by an administrator himself or his counsel, unless they were for the benefit of the estate. Martin's Appeal, 33 Phila. Leg. Int. 297.

A claim for counsel fees, when presented against an estate, must rest on the basis of the needs of the estate and must be rendered in behalf of all who have an interest in the surplusage of it. Weingart's Estate, 32 Phila. Leg. Int. 169.

Here the proceedings to remove the trustee by the parties having the right to remove it was a personal matter to the trustee, and did not involve the execution of the trust except indirectly, except in so far as it might lead to his discharge as trustee.

It cannot be said that counsel fees incurred by the trustee in an effort to hold his appointment involve the execution of the trust or are necessary to the proper administration of the trust, or are for the benefit of the estate, especially as the effort was unsuccessful.

The conclusions of the auditing judge that the argument comparing the claim for counsel fees in this case to such claim in an issue *devisavit vel non* cannot apply because the trustee was appointed and was acting under a decree of a court having jurisdiction is predicated upon another conclusion,—that is, that the probate of a will and granting letters by the register is not a judicial act, not a decree of a court having jurisdiction.

But the act of the register is a decree, and is binding until reversed.   Wilson v. Gaston, 38 Phila. Leg. Int. 43.

The analogy is apt.   It is the principle that is contended for, and it is just as applicable to a contest between a guardian and ward, trustee and *cestui que trust,* as between the devisees and heirs under a disputed will.   Rankin's Appeal, 38 Phila. Leg. Int. 374, decides that an executor who employs counsel to sustain a will cannot have an allowance for counsel fees paid for professional services in resisting appellant's application for an issue *devisavit vel non,* and that when the interests of all parties under a testamentary instrument are menaced, it may be the duty of the executor or trustee therein named to uphold and defend it; but when the contest as to its validity is substantially between two sets of legatees or devisees or heirs-at-law, he has no right to espouse the interests of either to the exclusion of the other.

An administrator is not allowed expenses for opposing the probate of a will.   Edwards v. Ela, 5 Allen, 87.

The expenses of trying an issue *devisavit vel non* must be borne by the parties to it, even when the testamentary act is validated by a judicial fiat.   Mumper's Appeal, 3 Watts & S. 441.

So, where there is a contest between the executor and the distributees.   Heister's Appeal, 7 Pa. 457.

An administrator *pendente lite* has nothing to do with such a contest in his official capacity, and of course cannot charge the expenses of it in his own account.   Dietrich's Appeal, 2 Watts, 332.

Nor where the professional services are more for the benefit of the trustee than the estate.   Meacham v. Sternes, 9 Paige, 407.

Where the deed under which the trustee acts has been set aside as invalid, he is not entitled to expenses.   Smith v. Dresser, L. R. 1 Eq. 651, 655.


PER CURIAM:

The services rendered by the appellant were undoubtedly meritorious so far as he is concerned.   Inasmuch, however, as they were for the benefit of the trustee and in opposition to the interests of a *cestui que trust,* their property should not be applied to the payment of those services.   The appellant must look

to the former trustee, to whom he rendered the services, for his compensation.

Decree affirmed and appeal dismissed, at the costs of the appellant.