# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of | ) ) ) | No. 74508-5-I |
| WILLIAM NEAL FRANCE, | ) ) ) | PUBLISHED OPINION |
| Petitioner. | ) | FILED: July 24, 2017 |

SCHINDLER, J. — A jury convicted William Neal France as charged of three counts of felony harassment of his former attorney and two counts of felony harassment of The Defender Association (TDA) deputy director in violation of RCW 9A.46.020. The Washington Supreme Court affirmed the felony harassment convictions. State v. France, 180 Wn.2d 809, 820, 329 P.3d 864 (2014). On December 8, 2015, France filed a personal restraint petition. France claims that because the course of conduct is repeatedly threatening to cause bodily harm to the same victim, three of the five convictions violate double jeopardy and the prohibition against multiple punishments for the same offense. France argues the only case that has addressed the unit of prosecution for felony harassment, State v. Vidales Morales, 174 Wn. App. 370, 298 P.3d 791 (2013), supports his argument. We disagree. In Vidales Morales, we concluded that given the factual scenario in that case, the unit of prosecution was the threat to cause bodily harm to a single identified victim at a particular time and place

regardless of how many times the threat was communicated. Unlike in <u>Vidales Morales</u>, France made different types of threats to cause bodily harm to each of the two victims at different times and places. We conclude under the facts in this case, the unit of prosecution is each threat and each threat is a violation of the felony harassment statute. We deny the personal restraint petition.

<u>2009 Plea Agreement</u>

The State charged France with felony violation of a protection order in 2009. TDA attorney Anita Paulsen represented France and negotiated a plea agreement with the State. The State agreed to resolve a pending charge of misdemeanor assault in the fourth degree and recommend a drug offender sentencing alternative (DOSA). The court accepted the plea, finding France knowingly, intelligently, and voluntarily entered into the plea. TDA social worker Nina Beach worked with France to obtain benefits after release from custody.

At the sentencing hearing on October 16, 2009, the court followed the recommendation and imposed a DOSA sentence for felony violation of a protection order and a concurrent sentence for misdemeanor assault.

<u>2011 Plea Agreement</u>

Beginning in late 2010, France started leaving angry and "inappropriate" voice mails for Paulsen and Beach. After receiving "at least a dozen, probably more" voice mails, Paulsen met with TDA Deputy Director Lisa Daugaard.

Daugaard called France in an effort to figure out why he was so "upset" and "what was motivating such anger." When France returned the call, he was "quite upset" Daugaard had called him.

Daugaard sent France a "cease and desist" letter. Daugaard told France not to contact Paulsen or Beach. But Daugaard offered to talk to France about whether "he was dissatisfied or had concerns about his representation . . . and, if there was follow-up that needed to happen, [she] would make sure that that happened."

France ignored the cease and desist letter and continued to contact Paulsen and Beach. France also started leaving threatening voice mails for Daugaard.

Paulsen said that after Daugaard sent the cease and desist letter, "it was like putting gasoline on a fire." The voice mails "had a different character to them"— "[t]hreats of sexual assault, threats of cutting us, shooting us, . . . and sexual assault in the most vile language I think I've ever heard."

Daugaard and Paulsen contacted the police. Paulsen said she "had never, ever even contemplated reporting a client" to the police. Daugaard testified it was the first time in her career as a public defense attorney that she contacted the police about a client.

> I've never participated in reporting any of our clients to law enforcement out of all those thousands and thousands and thousands of interactions and many whatever dozens or hundreds of complaints and unhappy people and sometimes irrational-sounding people.
> None of those interactions have ever made me think it was appropriate to take that kind of step.

On September 23, 2011, the State charged France with 16 counts of felony harassment in violation of RCW 9A.46.020: 6 counts of felony harassment of Paulsen, 5 counts of felony harassment of Daugaard, and 5 counts of felony harassment of Beach. The State alleged manifest deliberate cruelty and an offense against an officer of the court as aggravating factors.

France pleaded guilty to nine counts of felony harassment and the aggravating factor of committing an offense against an officer of the court "in support of an exceptional sentence." In the "Statement of Defendant on Plea of Guilty," France admits, "I placed the calls that are contained in pre-trial exhibit 1."[1] France admits he "knowingly threatened to cause bodily injury" to each of the victims "immediately or in the future," he "threatened to maliciously do an act intended to substantially harm" each victim, and "my words placed [each victim] in reasonable fear that the threat would be carried out." The State agreed to dismiss the other seven counts of felony harassment and the aggravating factor of deliberate cruelty.

The court found there was a factual basis for the plea and France knowingly, intelligently, and voluntarily entered the plea. The court found France guilty as charged in the amended information.

Paulsen and Daugaard attended the sentencing hearing on November 10, 2011 to address imposition of an exceptional sentence. Paulsen told the court France was a "very dangerous" and "terrifying individual" who promised to "hunt us down like animals on the street in front of the courthouse or the jail as we went around about our work." Paulsen "just wanted it to be over" and urged the court to impose an exceptional sentence.

> [I]t [is] important for the Court to know how unusual this is, how dangerous I felt the situation was in that this was something for no apparent reason that I could understand, something that escalated in frequency over time, described time, place, manner of assault, history of violence towards others that had been acted upon, a history of gratuitous violence.

---

[1] Pre-trial exhibit 1 contains audio recordings and transcripts of the voice mails to Paulsen, Daugaard, and Beach.

4

Daugaard also asked the court to impose an exceptional sentence. Daugaard told the court France "talked about how he would find where I live and hurt not only me but whoever lived with me."

The court imposed an exceptional sentence of 180 months. The court ordered France to have no contact with the victims for the maximum term of 15 years.[2]

2011 Felony Harassment Charges

Despite the court order to have no contact with Paulsen and Daugaard, France started leaving voice mails for Paulsen and Daugaard almost immediately after the sentencing hearing on November 10, 2011.

On November 10, France left a voice mail for Daugaard threatening to harm her.

Hey bitch. You fucked up by coming into the courtroom today. You think for one fucking minute nothing's going to happen to you? You worthless mother-fucking slut. . . . Give a message to Rita, Anita Paulsen, same thing. 8 years. You'd better find a new job, bitch. You better find a new fucking job.

Paulsen testified that France called and left a voice mail "within hours of the sentencing" but she did not listen to the voice mail until November 11. In the voice mail, France tells Paulsen that "a few of my friends . . . [will] be paying you a visit."

Hello honey. Glad to hear your voice. What you did in the courtroom was outstanding. That was a marvelous fucking act. I never heard [inaudible] in my whole life. I called up a friend, I called up a few of my friends. I told them about [you]. They'll be paying you a visit. Have a nice fucking life, you worthless fucking bitch.

Paulsen said the voice mail placed her in absolute fear.

[I]t tells me he will not be dissuaded, he cannot be stopped, as soon as he has access to a phone, he will call and, as soon as he is out, he will try to

---

[2] France appealed. France argued the court abused its discretion by imposing an exceptional sentence. We disagreed and affirmed. State v. France, 176 Wn. App. 463, 465, 308 P.3d 812 (2013).

implement his threat, or he will find quote some of his friends to do that for him.

Paulsen described most of the other voice mails she had received as "sexually explicit with threats of anal rape and sodomy." Paulsen said the voice mail on November 11 was "different"—it was a threat that his friends would harm her.

On November 17, France left another threatening voice mail for Paulsen.

Hello Anita. That was spectacular you being in the courtroom. That was great. I like that, you was really concerned about my welfare. Just want to let you know there's a couple of, a couple of my buddies are coming to see ya. They'll take you out for lunch. You know. Show you, show you appreciation. Just to let you know. It's gonna be okay. I told them to take care of ya. You know to treat you really good.

Paulsen testified the statement "[t]hey'll take you out for lunch" meant his "buddies" would "take me out, period."

Q. Now, I don't know whether you would — this is a fair characterization or not, but do you detect some note of sarcasm in the voice or tone in terms of people showing their appreciation or taking you out to lunch, those sorts of things? The words seem to suggest one thing; how did you interpret that?
A. Mr. France has historically been fairly cagey with a lot of his cases. I interpret it as taking me out to lunch, meaning to take me out, period.
Q. Did you perceive it as a threat?
A. I did perceive it as a threat.
Q. Is there any doubt in your mind that it was intended as a threat?
A. No doubt at all.

On December 5, France left a sexually explicit voice mail for Paulsen threatening to "put a bullet" in her, sexually assault her, and anally penetrate her with a broom.

Anita Paulsen, I don't have a phone number for you to call me back. The only way I can call you, the only way I can get a hold of you is if I called you. But I do want to say one thing. You were spectacular in that courtroom on the 10th of this last month. Goddamn you were good. But there's one thing I do want to do though, I want to put a bullet up your fucking ass. But before I do that, I'm gonna lick your pussy. Stick my dick

in your pussy, then I'm gonna stick a broom up your ass. How you gonna feel about that little girl?

On December 14, France left a voice mail for Daugaard threatening that in 10 years, he would sexually assault her in the elevator.

Lisa, this is your favorite fucking person in the whole world. I like how you, uh, expressed yourself in the courtroom on the 10th of last month. Yeah, I liked that. It's been a fucking month, little lady. It's been a month. But see in 10 years, I want you to understand something real fuckin quick, I'm still gonna get ya. What you said in the courtroom wasn't called for, you come to the courtroom, coming to court, wasn't called for. You understand? Now I'm gonna do, I'm gonna do 96 fuckin months because of you. All because of you. But when I get out, I'm gonna get you in the fuckin elevator. I'm gonna fuck you in your ass, bitch. I'm gonna pull your fuckin pants down right in the elevator and I'm gonna let it have it. All up in ya, up and in ya, you little slut bitch.

The State charged France with three counts of felony harassment of Paulsen for the voice mails on November 11, November 17, and December 5, 2011 and two counts of felony harassment of Daugaard for the voice mails on November 10 and December 14, 2011 in violation of RCW 9A.46.020. The State alleged France committed the offenses against officers of the court as aggravating factors. France pleaded not guilty.

2012 Jury Trial

The jury trial began on March 1, 2012. The court granted the motion to amend the information to add a charge of intimidation of a witness in violation of RCW 9A.72.110. The State alleged that on December 27, 2011, France made a threat against Daugaard in an attempt to prevent her from testifying. In the December 27, 2011 voice mail, France tells Daugaard, "Don't come to court girl. Don't come to court."

The court admitted into evidence the audio recordings of the voice mails France left for Paulsen and Daugaard in November and December 2011. The State played the voice mail recordings for the jury. Paulsen and Daugaard were the only witnesses to

7

testify at trial. France stipulated that he had been previously convicted of felony harassment of Paulsen and Daugaard.

The jury found France guilty as charged of three counts of felony harassment of Paulsen, two counts of felony harassment of Daugaard, and intimidation of a witness.[3] The court imposed an exceptional sentence of 120 months.

France appealed. France argued insufficient evidence supported the convictions. We accepted the State's concession that insufficient evidence supported the witness intimidation conviction. We affirmed the jury convictions on the five counts of felony harassment. State v. France, 175 Wn. App. 1024, 2013 WL 3130408, at *1.

> The State needed to prove, in relevant part, that France knowingly threatened to maliciously do an act intended to substantially harm the victim's physical health or safety. France told Daugaard, "You think for one fucking minute nothing's going to happen to you? . . . Anita Paulsen, same thing, eight years, you'd better find a new job." He said that in 10 years he's "gonna get" her, and that he's going to sexually assault her in

---

[3] The court instructed the jury the State must prove beyond a reasonable doubt:

    (1) That . . . the defendant knowingly threatened:
        (a) maliciously to do any act which was intended to substantially harm [the victim] with respect to her physical health or safety; and
    (2) That the words or conduct of the defendant placed [the victim] in reasonable fear that the threat would be carried out;
    (3) That the defendant acted without lawful authority;
    (4) That the defendant was previously convicted of the crimes of Felony Harassment against [the victim]; and
    (5) That the threat was made or received in the State of Washington.

The court instructed the jury on the definition of "harassment."

> A person commits the crime of harassment when he, without lawful authority, knowingly threatens maliciously to do any act which is intended to substantially harm another person with respect to his or her physical health or safety and when he or she by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

The court instructed the jury on the definition of "threat."

> As used in these instructions, threat also means to communicate, directly or indirectly, the intent immediately to use force against any person who is present at the time.
> To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat.

8

the elevator. He told Paulsen that he would "put a bullet" in her, sexually assault her, and anally penetrate her with a broom. He told Paulsen that his friends were going to pay her a visit. He also stated, "[A] couple of my buddies are coming to see ya. They're going to take you out for lunch." Paulsen testified that she interpreted these words as a threat, "meaning to take me out, period." A rational trier of fact could determine that in leaving these voice mails, France intended to substantially harm Paulsen and Daugaard with respect to their physical health or safety. We conclude that evidence was sufficient to support France's felony harassment convictions.

France, 2013 WL 3130408, at *5.[4] The Supreme Court affirmed the felony harassment convictions. State v. France, 180 Wn.2d 809, 820, 329 P.3d 864 (2014).

Personal Restraint Petition

France filed a personal restraint petition on December 8, 2015. Under RCW 10.73.090, a personal restraint petitioner generally has one year from the time a judgment becomes final to file a petition. There is no dispute France timely filed the petition.

A petitioner filing a personal restraint petition is entitled to relief if he is under unlawful restraint as defined in RAP 16.4. A restraint is "unlawful" where "[t]he conviction was obtained . . . in violation of the Constitution of the United States or the Constitution . . . of the State of Washington." RAP 16.4(c)(2). A petitioner raising constitutional error must show the error caused actual and substantial prejudice. In re Pers. Restraint of Davis, 152 Wn.2d 647, 671-72, 101 P.3d 1 (2004); In re Pers. Restraint of Cook, 114 Wn.2d 802, 811-12, 792 P.2d 506 (1990).

France contends three of the five felony harassment convictions violate double jeopardy and the prohibition against multiple punishments for the same offense.

---

[4] Alterations in original.

9

Double jeopardy is a question of law that we review de novo. State v. Reeder, 184 Wn.2d 805, 825, 365 P.3d 1243 (2015). The double jeopardy clause of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution "protects a defendant from being punished multiple times for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969); State v. Adel, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998); State v. Villanueva-Gonzalez, 180 Wn.2d 975, 980, 329 P.3d 78 (2014). Under the Fifth Amendment, "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." Under article I, section 9, "[n]o person shall . . . be twice put in jeopardy for the same offense."

When a defendant is convicted of violating the same statute multiple times, we must determine what "unit of prosecution" the legislature intended as " 'the punishable act under the specific criminal statute.' " Reeder, 184 Wn.2d at 825 (quoting Adel, 136 Wn.2d at 634). Double jeopardy protects a defendant from conviction more than once under the same statute if the defendant commits only one unit of the crime. Reeder, 184 Wn.2d at 825; Adel, 136 Wn.2d at 634.

The legislature has the power to define what conduct is punishable and the prohibition on double jeopardy "imposes '[f]ew, if any, limitations' on that power." Villanueva-Gonzalez, 180 Wn.2d at 980[5] (quoting Sanabria v. United States, 437 U.S. 54, 69, 98 S. Ct. 2170, 57 L. Ed. 2d 43 (1978)). "The scope of the criminal act as defined by the legislature is considered the unit of prosecution." Reeder, 184 Wn.2d at

---

[5] Alteration in original.

825; Adel, 136 Wn.2d at 634. The unit of prosecution for a crime can be either an act or a course of conduct. State v. Hall, 168 Wn.2d 726, 730, 230 P.3d 1048 (2010).[6]

The determination of the unit of prosecution " 'ultimately revolves around a question of statutory interpretation and legislative intent.' " State v. Barbee, 187 Wn.2d 375, 382, 386 P.3d 729 (2017) (quoting Adel, 136 Wn.2d at 634). The goal of statutory interpretation is to ascertain and carry out the intent of the legislature. Barbee, 187 Wn.2d at 382. The first step is to look to the plain meaning of the statute. Barbee, 187 Wn.2d at 383. If the plain meaning of the statute is ambiguous, we may determine legislative intent by reviewing legislative history. Barbee, 187 Wn.2d at 383. Last, we perform a factual analysis as to the unit of prosecution because "the facts in a particular case may reveal more than one 'unit of prosecution' is present." State v. Varnell, 162 Wn.2d 165, 168, 170 P.3d 24 (2007). If there is still doubt, the rule of lenity applies and requires any ambiguity be resolved against turning a single transaction into multiple offenses. Reeder, 184 Wn.2d at 825.

The question here is " 'what act or course of conduct' " did the legislature define as the punishable act under the harassment statute, RCW 9A.46.020. Villanueva-Gonzalez, 180 Wn.2d at 980-81 (quoting Adel, 136 Wn.2d at 634).

The legislature enacted the harassment statute in 1985 as "part of a multifaceted remedial scheme . . . to protect citizens from harmful harassing behavior." State v.

---

[6] In Hall, the court held the unit of prosecution for witness tampering is "the ongoing attempt to persuade a witness not to testify in a proceeding," not necessarily any single attempt to do so. Hall, 168 Wn.2d at 734. In direct response to Hall, in April 2011, the legislature amended the witness tampering statute and added the following language to supersede Hall: "For purposes of this section, each instance of an attempt to tamper with a witness constitutes a separate offense." LAWS OF 2011, ch. 165, § 3; RCW 9A.72.120(3).

Smith, 111 Wn.2d 1, 3, 759 P.2d 372 (1988).

> The legislature finds that the prevention of serious, personal harassment is an important government objective. Toward that end, this chapter is aimed at making unlawful the repeated invasions of a person's privacy by acts and threats which show a pattern of harassment designed to coerce, intimidate, or humiliate the victim.
> The legislature further finds that the protection of such persons from harassment can be accomplished without infringing on constitutionally protected speech or activity.

RCW 9A.46.010.

RCW 9A.46.020 defines the elements of the crime. A person is guilty of harassment if, without lawful authority, he or she knowingly threatens to cause bodily injury immediately or in the future and the words or conduct place the person threatened in reasonable fear that the threat will be carried out. RCW 9A.46.020(1). RCW 9A.46.020(1) states:

> A person is guilty of harassment if:
> (a) Without lawful authority, the person knowingly threatens:
> (i) To cause bodily injury immediately or in the future to the person threatened or to any other person; or
> (ii) To cause physical damage to the property of a person other than the actor; or
> (iii) To subject the person threatened or any other person to physical confinement or restraint; or
> (iv) Maliciously to do any other act which is intended to substantially harm the person threatened or another with respect to his or her physical or mental health or safety; and
> (b) The person by words or conduct places the person threatened in reasonable fear that the threat will be carried out.

The crime of harassment is a class C felony if the defendant has been previously convicted of any crime of harassment of the same victim or any person named specifically in a no-contact or no-harassment order, threatens to kill the person

12

threatened or any other person, or harasses a criminal justice participant performing his or her duties. RCW 9A.46.020(2)(b). RCW 9A.46.020(2) states:

> (a) Except as provided in (b) of this subsection, a person who harasses another is guilty of a gross misdemeanor.
>      (b) A person who harasses another is guilty of a class C felony if any of the following apply: (i) The person has previously been convicted in this or any other state of any crime of harassment, as defined in RCW 9A.46.060, of the same victim or members of the victim's family or household or any person specifically named in a no-contact or no-harassment order; (ii) the person harasses another person under subsection (1)(a)(i) of this section by threatening to kill the person threatened or any other person; (iii) the person harasses a criminal justice participant who is performing his or her official duties at the time the threat is made; or (iv) the person harasses a criminal justice participant because of an action taken or decision made by the criminal justice participant during the performance of his or her official duties. For the purposes of (b)(iii) and (iv) of this subsection, the fear from the threat must be a fear that a reasonable criminal justice participant would have under all the circumstances. Threatening words do not constitute harassment if it is apparent to the criminal justice participant that the person does not have the present and future ability to carry out the threat.

Because the legislature does not define the unit of prosecution, France contends it is the course of conduct of repeatedly threatening the same victim. France asserts the only case to address the unit of prosecution for felony harassment, State v. Vidales Morales, 174 Wn. App. 370, 298 P.3d 791 (2013), supports his argument. We disagree.

In State v. Alvarez, 74 Wn. App. 250, 252, 872 P.2d 1123 (1994), we addressed whether the harassment statute punished only repeated threats. In Alvarez, the defendant argued the criminal antiharassment act of 1985 required more than one act of harassment against a single victim. Alvarez, 74 Wn. App. at 252. The defendant asserted the legislative findings established the intent to criminalize only " 'repeated invasions . . . by acts and threats which show a pattern of harassment.' " Alvarez, 74

Wn. App. at 256[7] (quoting RCW 9A.46.010).

We concluded that although the legislative intent and findings in RCW 9A.46.010 "speak[ ] in the plural, declaring the aim of 'making unlawful the repeated invasions of a person's privacy by acts and threats' showing a 'pattern of harassment,' " the statute defining the crime, RCW 9A.46.020, "unambiguously describes what is necessary for conviction." Alvarez, 74 Wn. App. at 257. Because the elements section is unambiguous and requires "only one act or threat rather than multiple acts or threats to support a conviction," we held the statement of legislative intent did not "override the unambiguous elements section of [the] penal statute." Alvarez, 74 Wn. App. at 258.

> We will not substitute the intent section's reference to plural "acts and threats" for the straightforward definition of the crime found in RCW 9A.46.020, on the basis of a perceived inconsistency between that section and the preamble in RCW 9A.46.010.

Alvarez, 74 Wn. App. at 258 (quoting RCW 9A.46.010).

In State v. Alvarez, 128 Wn.2d 1, 13, 904 P.2d 754 (1995), the Washington Supreme Court affirmed. The Supreme Court held that although the legislative intent and findings indicate the legislature "intended to make criminal 'repeated invasions of a person's privacy' by acts and threats showing a 'pattern of harassment,' " the unambiguous language of the statute defining the crime does not require repeated invasions or a pattern of harassment. Alvarez, 128 Wn.2d at 12 (quoting RCW 9A.46.010).

> Harassment is defined under RCW 9A.46.020. Nothing in that section indicates a legislative intent to criminalize only invasion of privacy by repeated acts and threats showing a pattern of harassment.

Alvarez, 128 Wn.2d at 12. The Supreme Court held RCW 9A.46.020 is the operative

---

[7] Alteration in original.

and controlling statute that defines the elements and prescribes the penalties, and the court of appeals correctly concluded RCW 9A.46.020 requires only one act of harassment against a victim. Alvarez, 128 Wn.2d at 12-13.

Vidales Morales is the only case that has addressed the unit of prosecution for felony harassment. In Vidales Morales, Jesus Vidales Morales threatened to kill the mother of his three children, Yanett Farias. Vidales Morales, 174 Wn. App. 374. On February 14, 2011, Morales went to the house of her sister. Morales told the sister's spouse Trinidad Diaz that when Farias dropped the children off at day care the next morning, "he would be waiting for her and kill her." Vidales Morales, 174 Wn. App. at 374. Diaz feared Morales would carry out the threat. Farias's sister called Farias to tell her that Morales threatened to kill her when she took the children to day care the next morning. Farias contacted the police. Vidales Morales, 174 Wn. App. at 374.

The next morning on February 15, Farias saw Morales parked across the street from the house of the day care provider. Vidales Morales, 174 Wn. App. at 375. Farias told the children to run inside the house. The day care provider helped the 11-year-old call the police. Vidales Morales, 174 Wn. App. at 375. Meanwhile, Morales blocked Farias from driving away with his truck. Morales yelled at Farias, " 'This is as far as you've gone, you fucking bitch, because I'm going to kill you here.' " Vidales Morales, 174 Wn. App. at 375. After the day care provider intervened and yelled at Morales, he left. Vidales Morales, 174 Wn. App. at 375.

The State charged Morales with two counts of felony harassment in violation of RCW 9A.46.020. Vidales Morales, 174 Wn. App. at 375. The State alleged Morales threatened to kill Farias on February 14, 2011, count 1; and he threatened to kill Farias

15

on February 15, 2011, count 2. Vidales Morales, 174 Wn. App. at 375-76. A jury convicted Morales as charged of two counts of felony harassment. Vidales Morales, 174 Wn. App. at 376.

On appeal, we addressed "whether, if a person threatens a single harm, placing the person threatened in fear, the unit of prosecution is then that threat of harm, or is instead each time and place he or she repeats it to the victim or third parties." Vidales Morales, 174 Wn. App. at 386. We held one of the two convictions for threatening to cause bodily harm to a single person at the same time and place violated double jeopardy. Vidales Morales, 174 Wn. App. at 387-88.[8] We concluded that given the particular factual scenario, a threat to cause bodily harm to a single identified person at a particular time and place was "only one unit of prosecution," regardless of how many times the threat was communicated to others. Vidales Morales, 174 Wn. App. at 387-88.

> We need not determine the unit of prosecution for all harassment scenarios to conclude that where, as here, a perpetrator (1) threatens to cause bodily harm to a single identified person at a particular time and place and (2) places a single victim of the harassment in reasonable fear that the threat will be carried out, the conduct constitutes a single offense. The harassment statute focuses on a perpetrator's coercing, intimidating, or harassing the victim by a threat or threats that place her in reasonable fear. The number of persons who might learn of the threat and communicate with the victim about it and the number of times it might be communicated are secondary.

Vidales Morales, 174 Wn. App. at 387.

Here, because the facts establish France made different types of threats to cause bodily harm to Paulsen and Daugaard at different times and places, the unit of

---

[8] We vacated one of the convictions and remanded for resentencing. Vidales Morales, 174 Wn. App. at 388. See State v. Knight, 162 Wn.2d 806, 810, 174 P.3d 1167 (2008) (The proper remedy is to vacate a conviction that violates double jeopardy.).

prosecution in this case is each threat.

In the November 10, 2011 voice mail to Daugaard, France threatened to harm Daugaard when he got out of prison in eight years. France tells Daugaard, "You fucked up. . . . You think for one fucking minute nothing's going to happen to you? . . . Give a message to . . . Anita Paulsen, same thing. [Eight] years. You'd better find a new job, bitch. You better find a new fucking job."

In the November 11 voice mail, France tells Paulsen that he "called up a few of my friends" and they would "be paying you a visit." Paulsen testified that France threatened to "recruit other individuals to . . . hurt me."

> [W]hat struck me is, despite all attempts, when he's in custody, to limit his access to a telephone, he still manages to call, and I believe that he would attempt to recruit other individuals to — to hurt me.

In the November 17 voice mail, France told Paulsen, "[M]y buddies are coming to see ya. They'll take you out for lunch. . . . I told them to take care of ya." Paulsen testified the November 17 voice mail meant France planned to recruit others to kill her. Paulsen testified she was "[a]bsolutely" afraid after receiving the voice mail and believed France "will not be dissuaded, he cannot be stopped" from "implement[ing] his threat" to harm her.

In the December 5 voice mail, France told Paulsen he wanted "to put a bullet up your fucking ass," "I'm gonna lick your pussy" and "[s]tick my dick in your pussy," and "then I'm gonna stick a broom up your ass." Paulsen testified that after she received the December 5 voice mail, she believed it was only "a question of time" before France would try to carry out his threats.

> Q. What effect or impact do you recall did that [December 5] call have on you, Miss Paulsen?

17

Q. ... Reflecting back on those calls, considering how you thought about them over that time, do you have any changed opinion about your sense of safety or the threats that are a part of those ... three calls you've identified?

A. No, I think it's a question of time before Mr. France comes after me.

In the December 14 voice mail to Daugaard, France states that "in 10 years, ... I'm gonna get you in the fuckin elevator" and "fuck you in your ass, bitch." Daugaard testified that she felt "extreme apprehension that Mr. France might do the things that he said" in his voice mails. Specifically, in the November 10 voice mail, threatening to harm her in "8 years," and in the December 14 voice mail, threatening to sexually assault her. Daugaard testified, "[N]o one has ever made me feel afraid in the way that these calls made me afraid because they are so specific, and because they are so reasonable, honestly, in the plan that is being expressed." Daugaard testified that she took France's threats seriously because he was very specific about the timing, location, and types of harms he threatened.

Q. You took the threats seriously, and why is that?
A. Because it was very evident that Mr. France wanted us to take them very seriously.
    They were very — they kept coming. They were very explicit. They were very specific. They were very mean. What was being threatened was awful.
Q. Disturbing?
A. Yes, and he also was making an effort to — seemed to be making an effort to make clear, you know, he was explaining exactly how he was going to do these things, and exactly where he was going [to] do these things, and exactly how he was going to get away with doing these things.

Because the facts establish France made different threats to cause bodily harm to Paulsen and Daugaard at different times and places, the jury convictions for five

18

counts of felony harassment do not violate double jeopardy. We deny the personal restraint petition.

Schindler, J

WE CONCUR:

Trickey, J