

**FILE**

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE **JAN 0 5 2017**

CHIEF JUSTICE

This opinion was filed for record

at 8:00am on Jan 5, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | No. 92771-5 |
| v. | ) | En Banc |
| SHACON FONTANE BARBEE, | ) | |
| Petitioner. | ) | Filed **JAN 0 5 2017** |

OWENS, J. — At issue in this case is whether a pimp can be convicted on multiple counts of promoting prostitution when multiple prostitutes are involved. We have not previously considered the unit of prosecution for second degree promoting prostitution. In light of the statute's plain language and prior decisions of this court, we affirm the Court of Appeals and hold that the legislature expressed its clear intent to authorize multiple convictions when one pimp exploits multiple individuals.

Additionally, after the court accepted review of this case, the parties discovered that the defendant's exceptional sentence for one of his other convictions

exceeded the statutory maximum. The defendant requests resentencing, and the State concedes that resentencing is appropriate. We remand for resentencing on that count.

FACTS

Shacon Barbee was a pimp that made money from prostitutes working under his supervision. Three young women that Barbee "supervised" during 2010 were SE, BK, and CW.

### i.   SE

SE met Barbee when she was 13 and began working for him as a prostitute when she was 16. Along with posting ads on websites such as Backpage.com, SE would also work "the track" (a slang term for working on the streets) in popular Seattle-area prostitution locations including Aurora Avenue and Pacific Highway South. SE thought that Barbee cared about her and that they would spend their lives together. She testified at trial that she was expected to make $1,000 a day or stay up at night until she met that quota. All of her earnings went to Barbee.

Barbee required SE to recruit other girls or young women to work for him as prostitutes. SE would peruse websites like MySpace or Facebook, looking for attractive girls who might be interested in "escorting." During 2010, two of the women she recruited on Barbee's behalf were two 18-year-olds, BK and CW.

2

ii.    BK

SE recruited 18-year-old BK to work for Barbee in April 2010. While BK was living with her aunt in Seattle, SE found BK's Facebook page. The two started to communicate and comment on each other's photos. SE convinced BK to meet her at a room in the Sutton Suites hotel in SeaTac where they could "hang out and chill." Verbatim Report of Proceedings (VRP) (Aug. 22, 2013) at 107.

BK met SE at the motel room, where SE introduced her to Barbee. He told BK that she would be working for him as an escort, that all the money she earned would go to him, and that he would provide her with everything she needed to make her life and her daughter's life better. BK soon began working as a prostitute for Barbee, initially working out of a motel room and later moving to "the track."

On March 25, 2010, police received a complaint of potentially juvenile prostitutes working out of a room at the Sutton Suites. Police responded and found SE and BK inside the hotel room, along with prostitution and "pimping" paraphernalia. After BK was arrested and then released from jail, she went to her parents' house, intending to stop working for Barbee.

A few months later, Barbee texted BK and convinced her to come to his apartment in Seattle. BK soon began living in the apartment and working for Barbee again. She testified at trial that Barbee took the keys to her car and refused to return

3

them, would not allow her to leave the apartment during the day, and allowed her to go shopping or visit her daughter only if he accompanied her.

At some point in late 2010, BK left and stopped working for Barbee permanently.

### iii.  CW

Eighteen-year-old CW also worked for Barbee during 2010, but for a comparatively short time. She was living in Bellingham and working at a nursing home when SE began communicating with her via MySpace in early May. Excited about the idea of becoming more independent, CW packed her bags, borrowed a friend's car, and moved to Seattle to meet SE at a Motel 6 on Pacific Highway South. Once she arrived, CW was told that she would be working for Barbee as an escort, that all of her money would go to him, and that he would provide her with clothes, jewelry, and a place to live.

The next day, CW began working for Barbee as a prostitute. CW would host "dates" out of a motel room, and Barbee would drive her to "out-calls." Barbee took photos of CW and set up online advertisements for her on Backpage.com. Again, any money she earned went to Barbee.

A few weeks later, CW became disillusioned and texted Barbee that she was quitting. While Barbee was driving SE to a dentist's appointment, CW packed her

bags and asked her grandmother to pick her up. She left and never had contact with Barbee again.

*iv.  December 3, 2010, Hampton Inn incident and aftermath*

That December, SE arranged online to meet a client for an out-call at the Hampton Inn in Kent. Barbee drove SE to the motel and waited for her while she went inside. The client she had arranged to meet turned out to be an undercover officer. When SE arrived and agreed to have sex with the detective, she was arrested. After a short car chase, police officers arrested Barbee as well.

After arresting Barbee, police seized his iPhone as evidence and secured a warrant to search its contents. The detectives recovered approximately 12,000 text messages from between May and December 2010, many of which were exchanged between Barbee and SE, CW, and BK. The police also obtained Backpage.com records that showed Barbee had paid for numerous prostitution-related ads. They searched storage units rented to Barbee and found more pimping- and prostitution-related items, as well as financial records and a safe containing large amounts of cash.

The State charged Barbee with two counts of promoting sexual abuse of a minor (SE), one count of first degree promoting prostitution (BK), one count of second degree promoting prostitution (CW), one count of leading organized crime, two counts of first degree theft from the Social Security Administration, and one

count of second degree theft from the Department of Social and Health Services (DSHS).[1] The jury found Barbee guilty on all counts, except that they found him guilty of the lesser included offense of second degree promoting prostitution of BK. The jury made a special finding that promoting commercial sexual abuse of SE was part of a pattern of abuse over a "prolonged period of time," and the court imposed exceptional sentences of 420 months for the first two promoting commercial sexual abuse of a minor (PCSAM) convictions. Clerk's Papers (CP) at 308, 332. The Court of Appeals affirmed all of Barbee's convictions. *State v. Barbee*, 192 Wn. App. 1001 (2015).

Barbee petitioned for review on several issues. This court granted review only as to the unit of prosecution issue in relation to the two promoting prostitution charges and the issue of the exceptional sentence imposed for the first count of PCSAM. *State v. Barbee*, 185 Wn.2d 1025, 377 P.3d 714 (2016).

---

[1] During the course of the investigation, police discovered that Barbee supplemented his income with regular payments from the Supplemental Security Income Program and from DSHS based on claimed disabilities and poverty. Not surprisingly, he did not report his prostitution-related income to these agencies. These charges are not at issue here. Additionally, the State also charged Barbee with one count of promoting commercial sexual abuse of a minor, AM, and one count of witness tampering as to AM, but both charges were dismissed.

6

ISSUES

1. Did Barbee's two counts of second degree promoting prostitution constitute a single unit of prosecution?

2. Was Barbee entitled to resentencing on the first count of PCSAM?

ANALYSIS

*1. Barbee's Two Counts of Second Degree Promoting Prostitution Constitute Two Distinct Units of Prosecution*

Barbee claims that the two counts of promoting prostitution of BK and CW constitute a single unit of prosecution, or that he committed a single "enterprise" of promoting prostitution that involved two prostitutes. He contends that his two convictions for promoting prostitution of "different women as part of the same enterprise over the same period of time" encompassed a single unit of prosecution in violation of the double jeopardy prohibition clauses of our federal and state constitutions. *See* U.S. CONST. amend. V; WASH. CONST. art. I, § 9. We review double jeopardy claims de novo. *State v. Hughes*, 166 Wn.2d 675, 681, 212 P.3d 558 (2009).

Double jeopardy is violated when a person is convicted multiple times for the same offense. *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998). When the convictions are under the same statute, the court must ask what "'unit of prosecution'" the legislature intended as the punishable act under the specific

7

criminal statute. *Id.* Both constitutions protect a defendant from being convicted more than once under the same statute if the defendant commits only one unit of the crime. *State v. Tvedt*, 153 Wn.2d 705, 710, 107 P.3d 728 (2005) (quoting *State v. Westling*, 145 Wn.2d 607, 610, 40 P.3d 669 (2002)). Thus, while a unit of prosecution inquiry is "one of constitutional magnitude on double jeopardy grounds, the issue ultimately revolves around a question of statutory interpretation and legislative intent." *Adel*, 136 Wn.2d at 634.

When engaging in statutory interpretation, our goal is to ascertain and carry out the intent of the legislature. *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). To determine legislative intent and thus define the proper unit of prosecution, we first look to the statute's plain meaning. *State v. Varnell*, 162 Wn.2d 165, 168, 170 P.3d 24 (2007); *Adel*, 136 Wn.2d at 635. If the plain meaning of the statute is ambiguous, we may also determine legislative intent by reviewing legislative history. *Hughes*, 166 Wn.2d at 684.

Once we have defined the proper unit of prosecution, we perform a factual analysis to ascertain whether the facts in a particular case reveal that more than one "unit" is present. *Varnell*, 162 Wn.2d at 168. If, however, the legislature failed to denote the unit of prosecution or if its intent is unclear, the rule of lenity requires any ambiguity be resolved against turning a single transaction into multiple offenses. *Tvedt*, 153 Wn.2d at 711. We discuss each of these steps below.

8

*A. The Plain Language of the Statute Unambiguously Authorizes Multiple Convictions When an Individual Promotes Prostitution of Multiple People*

First, we look to the plain language of the statute. Barbee was convicted of two counts of second degree promoting prostitution under RCW 9A.88.080: one for promoting prostitution of BK and the other for promoting prostitution of CW. CP at 246. In Washington, a person is guilty of second degree promoting prostitution if he or she knowingly "[a]dvances prostitution" or "[p]rofits from prostitution." RCW 9A.88.080(1)(b), (a).

RCW 9A.88.060 defines both "advances prostitution" and "profits from prostitution." First,

> A person "advances prostitution" if, acting other than as a prostitute or as a customer thereof, he or she causes or aids *a person* to commit or engage in prostitution, procures or solicits customers for prostitution, provides persons or premises for prostitution purposes, operates or assists in the operation of a house of prostitution or a prostitution enterprise, or engages in any other conduct designed to institute, aid, or facilitate an act or enterprise of prostitution.

RCW 9A.88.060(1) (emphasis added). Similarly,

> A person "profits from prostitution" if, acting other than as a prostitute receiving compensation for personally rendered prostitution services, he or she accepts or receives money or other property pursuant to an agreement or understanding with any person whereby he or she participates or is to participate in the proceeds of prostitution activity.

RCW 9A.88.060(2).

9

i.    *Court of Appeals Split*

Divisions One and Two of the Court of Appeals have come to different conclusions regarding whether the statute evinces a clear legislative intent to impose multiple punishments when one individual employs two or more prostitutes in the same time frame.

Division Two concluded that the statute was ambiguous as to the unit of prosecution and applied the rule of lenity. In *State v. Mason*, 31 Wn. App. 680, 681, 644 P.2d 710 (1982), an owner of a steam bath was convicted of three counts of promoting prostitution, each based on a different prostitute working for the defendant as a "masseuse" at the same massage parlor during the same two week period. The defendant argued that she committed a single unit of prosecution, asserting among other things that she was guilty of at most a general plan to promote prostitution. *Id.* at 686. The court did not find a clear legislative intent to impose multiple punishments on one person's promotion of prostitution by employing "two or more persons simultaneously over a period of weeks in the same location." *Id.* at 687. Thus, the court applied the rule of lenity, focusing on the "apparent evils" that the legislature sought to attack and holding that "[a] person is equally guilty of either of those evils whether he has only one prostitute working for him or several." *Id.*

Six years later, Division One disagreed in *State v. Tu Nam Song*, 50 Wn. App. 325, 748 P. 2d 273 (1988), another "masseuse" case. There, the defendant was convicted of one count of second degree promoting prostitution and two counts of attempted second degree promoting prostitution. The massage parlor owner had agreed, on two separate occasions, to hire undercover police officers posing as prostitutes. The owner had also accepted money from a massage parlor employee, knowing that the employee had earned the money by performing an act of prostitution with a customer. *Id.* at 326. Relying on *Mason*, the defendant argued that she could not be convicted on multiple counts. *Id.* at 327. The court disagreed, concluding that the legislature's intent to "'make a person's simultaneous promotion of prostitution on the part of more than one prostitute a criminal act as to each'" was clearly expressed in the statute's language. *Id.* at 328 (quoting *Mason*, 31 Wn. App. at 686). While the court did not parse the language of the statute, it noted that that "[w]e simply see no ambiguity and therefore no basis upon which to invoke the rule of lenity." *Id.* at 329.

As explained below, the court's result in *Song* is more persuasive. The plain language of the statute and other unit of prosecution cases decided by this court indicate that the legislature unambiguously intended to allow for

11

multiple convictions when a pimp "promotes" two or more prostitutes simultaneously.

*ii.    Singular Language and Use of "a Person"*

We have repeatedly interpreted the legislature's use of the word "a" in criminal statutes as authorizing punishment for each individual instance of criminal conduct, even if each instance occurred in the same time frame. *See, e.g., State v. Ose*, 156 Wn.2d 140, 147, 124 P.3d 635 (2005). We apply this same reasoning here.

Most tellingly, in *State v. Root*, 141 Wn.2d 701, 710-11, 9 P.3d 214 (2000), we held that the legislature's use of the words "a minor" in the sexual exploitation of a minor statute, RCW 9.68A.040, indicated that the defendant "may be charged per child involved." We went on to note that "[e]ven if two children were involved in the same session, [the defendant] may be charged twice for the same session because he violated one unit of crime for each child involved in the session." *Id.* Again, in *Ose*, we affirmed 25 counts of possessing a stolen access device, noting that "the legislature, by use of the language 'a stolen access device,' unambiguously defined the unit of prosecution . . . as each access device in a defendant's possession." 156 Wn.2d at 148 (quoting RCW 9A.56.160(1)(c)).

12

Especially when criminal statutes reference "a person" or "another person," we have reached the same result. In *State v. Graham,* 153 Wn.2d 400, 408, 103 P.3d 1238 (2005), this court analyzed the unit of prosecution for Washington's reckless endangerment statute. *See* RCW 9A.36.050(1). We held that the legislature authorized the imposition of multiple sentences when a defendant's act endangers multiple individuals. Interpreting the statute's plain language ("another person") and characterizing the crime as one "against the person," this court held that the State was entitled to charge the defendant with three counts, one per person endangered. *Graham,* 153 Wn.2d at 407-08. Again, in *Tvedt,* we found multiple units of prosecution when a defendant was convicted of four counts of robbery for robbing two convenience stores when two individuals were in each store. 153 Wn.2d at 711. Affirming entry of four counts (one per victim), we noted that robbery is a property crime *and* a crime against the person. The fact that the crime contained multiple "characteristic[s]" did not affect our result. *Id.* at 713.

However, in other unit of prosecution cases involving a single "course of conduct," we have held otherwise. In *State v. Hall,* 168 Wn.2d 726, 728, 230 P.3d 1048 (2010), we held that a defendant could not be convicted of three counts of witness tampering when he made multiple calls to a single witness in an attempt to persuade that witness not to testify in a single

proceeding. Also, in *State v. Leyda*, 157 Wn.2d 335, 138 P.3d 610 (2006), we held that only one conviction for identity theft was proper when a defendant used one victim's credit card four times. In *Varnell*, we held that only *one* act of solicitation occurred when a defendant asked one undercover officer to kill four people during the same conversation. There, we stated that "[t]he evil the legislature has criminalized is the act of solicitation. The number of victims is secondary to the statutory aim, which centers on the agreement on solicitation of a criminal act." *Varnell*, 162 Wn.2d at 169.

Here, unlike in *Varnell*, the number of victims is primary, rather than secondary, to the statutory aim. Under RCW 9A.88.080 and RCW 9A.88.060, a person "'advances prostitution'" if, among other things, "he or she causes or aids *a person* to commit or engage in prostitution." RCW 9A.88.060(1) (emphasis added). The statute's singular language and reference, first and foremost, to "a person" indicates that the legislature plainly authorized multiple punishments when multiple individuals are "promoted."

RCW 9A.88.060(1) also states that a person "'advances prostitution'" if he or she "operates or assists in the operation of a house of prostitution or a prostitution enterprise." Barbee draws attention to the words "a prostitution enterprise," arguing that "[t]he plain meaning of the statute

14

indicates the Legislature intended to punish as a single unit all of a defendant's conduct that advances 'a prostitution enterprise.'" Suppl. Br. of Pet'r at 10. Barbee also asserts that because the statute uses the indefinite article "a" preceding "prostitution enterprise," the legislature clearly intended to make each "enterprise" the unit of prosecution. *Id.* While it is true that the statute may allow charges based on individual "enterprises," this does not foreclose charges or convictions on a "per person" basis. Rather, the statute authorizes charges premised on either alternative. So long as the facts support one of these avenues, it is within the prosecutor's discretion to charge "per person" or "per enterprise."

Our own precedent, *State v. Elliott*, 114 Wn.2d 6, 785 P.2d 440 (1990), demands this conclusion. The defendant in that case was charged with two counts of second degree promoting prostitution, each based on the activities of a different prostitute working during a different charging period. Rather than charging the defendant with promoting a prostitution enterprise, the State charged two separate counts of "promoting the prostitution of two named women." *Id.* at 15. The defendant argued that the State was required to elect whether to charge promoting prostitution by advancing an enterprise or by advancing several individual acts. *Id.* at 12. The court disagreed, stating that "advancing prostitution may be committed *either* by assisting or

15

operating an enterprise of prostitution or by causing or aiding a person to engage in prostitution" and that "[i]n this case, the State charged two separate continuing offenses—one for each employee whose prostitution petitioner was accused of promoting at different times and from different locations." *Id.* at 12, 13-14 (emphasis added). While the court did not squarely address a unit of prosecution issue, *Elliott* indicates that promoting prostitution charges may be based on the activities of individual prostitutes working in different places at different times.

Petitioners note that the charging periods in *Elliott* are different from those in this case. In *Elliott*, the defendant "promoted" the two prostitutes during entirely different time frames: the first in 1983-84, and the second in 1985. *Elliott*, 114 Wn.2d at 9. By contrast, the charging period for CW is entirely within the charging period for BK.[2] However, the overlapping time periods do not alter our result, as we explain below.

### B. Adoption of Barbee's Proposed Interpretation Would Yield Absurd Results

When engaging in statutory interpretation, the court must avoid constructions that "yield unlikely, absurd or strained consequences." *Kilian*

---

[2] BK's charging period is January 1, 2010, through December 31, 2010. CW's charging period is May 10, 2010, through August 1, 2010.

*v. Atkinson*, 147 Wn.2d 16, 21, 50 P.3d 638 (2002) (plurality opinion).

Barbee urges this court to apply the rationale in *Mason* and *Adel*, arguing

that the unit of prosecution should be "each continuous prostitution

'enterprise,' regardless of the number of prostitutes employed." Suppl. Br.

of Pet'r at 16. Such an interpretation would yield absurd results. *Mason*

incorrectly focuses on the "apparent evils" the legislature sought to attack,

and *Adel* addresses an entirely different factual scenario.

In *Mason*, the court stated that "[t]he apparent evils the legislature

sought to attack were 'advancing prostitution' and 'profiting from

prostitution.' A person is equally guilty of either of those evils whether he

has only one prostitute working for him or several." 31 Wn. App. at 687.

We disagree. While the "evil" of promoting prostitution may be the same

regardless of how many prostitutes are "promoted," it does not follow that a

person is "equally guilty" whether he pimps one prostitute or several.

Rather, in statutes that involve crimes against persons, that guilt compounds

in magnitude depending on the number of lives that are affected. For

example, our kidnapping statute criminalizes a single evil—kidnapping—but

it would be absurd to hold that multiple convictions are inappropriate when a

defendant kidnaps multiple people. *See, e.g., State v. Louis*, 155 Wn.2d 563,

17

567, 120 P.3d 936 (2005) (implicitly authorizing two kidnapping convictions).

*Adel* is not persuasive on this set of facts for similar reasons. There, we determined the unit of prosecution for possession of marijuana. We held that although the defendant hid stashes of marijuana in separate locations, he committed only a single unit of prosecution because "[a] person is *equally guilty* of possession whether that person has the drug stashed in one place, or hidden in several places under the person's dominion and control." *Adel*, 136 Wn.2d at 637. This analogy is inappropriate here. Possession of marijuana is not a crime of exploitation. Its effect on individuals is not compounded depending on the number of locations where the marijuana is "stashed."

Further, as the State argues in its brief, under Barbee's proposed interpretation, a perpetrator would face but a single count for acts of promoting prostitution that spanned a decade and involved numerous individuals, so long as there was no gap in time between the courses of conduct with each individual. At the same time, a perpetrator engaged in the same acts would face multiple charges where there is a gap in time between his or her course of promoting the prostitution of multiple individuals.

Suppl. Br. of Resp't at 17. It is highly unlikely that the legislature intended such consequences.

### C. The Statute's Legislative History Further Indicates That Promoting Prostitution Is Primarily a Crime Committed against "a Person"

As explained above, the text of the statute is clear. The legislature authorized charges premised on either operating a prostitution enterprise or promoting individual prostitutes. Although not necessary to resolve the issue, an examination of the statute's legislative history also confirms that a defendant may face multiple convictions when he or she "promotes" multiple prostitutes. The history of Washington's promoting prostitution statute indicates that the statute is "victim-centered" and focused on criminalizing the promotion of prostitution as it related to each individual exploited.

The 1909 Criminal Code contained a section entitled "*Placing Female in House of Prostitution.*" LAWS OF 1909, ch. 249, § 188, at 944 (codified as former RCWA 9.79.060). The section contained various provisions that are analogous to today's second-degree promoting prostitution statute. Its first subsection criminalized, among other things, placing "*a female . . .* in a house of prostitution, with intent that she shall live a life of prostitution." *Id.*

(emphasis added). Thus, the 1909 statute's language centered, first and foremost, on the placement of *individual women* in houses of prostitution.

In 1975, the legislature enacted the contemporary version of the statute as part of a comprehensive crime bill. LAWS OF 1975, 1st Ex. Sess., ch. 260 (codified as ch. 9A.88 RCW). The acts listed in the 1909 law were replaced with the current "advances prostitution" and "profits from prostitution" language, as well as the separate offense of "permitting prostitution." Former RCW 9A.88.070(1)(a), .080(1)(a), .090(2) (LAWS OF 1975, 1st Ex. Sess., ch. 260; 13A SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 2103 (2d ed. 1998)). The second-degree promoting prostitution provision was amended only once in 2011 to make "technical corrections." S.B. 5045, at 1, 65th Leg., Reg. Sess. (Wash. 2011).

Thus, while the plain language of the statute is unambiguous, the legislative history also clearly reflects that the legislature intended the crime to be, in part, a crime against individual persons.

*D. Factual Analysis*

Finally, we consider whether the "facts in a particular case may reveal more than one 'unit of prosecution' is present." *Varnell*, 162 Wn.2d at 168 (citing *State v. Bobic*, 140 Wn.2d 250, 263-66, 996 P.2d 610 (2000)). Two

units are clearly proper here: CW and BK are two distinct "persons" who were both exploited by Barbee.

*E. Conclusion*

In sum, in light of the plain language of the statute and consistent with our prior construction of similarly worded statutes, we hold that the legislature, by use of the language "a person," unambiguously authorized a unit of prosecution for each person promoted. When a defendant promotes prostitution of more than one individual, he or she may be prosecuted for more than one count. Accordingly, we affirm the Court of Appeals' decision that Barbee's convictions for promoting prostitution of BK and CW did not violate prohibitions on double jeopardy.

2. *Barbee Is Entitled to a Resentencing Hearing on the First Count of Promoting Commercial Sex Abuse of a Minor*

In addition to two counts of promoting prostitution, Barbee was also convicted of two counts of PCSAM (both of which related to SE). Barbee received a 420-month exceptional sentence on both counts, running concurrently. Barbee argues, and respondents concede, that because PCSAM changed from a class B to a class A felony during the charging period for the first count, his exceptional sentence on count one exceeded the statutory maximum and that he is entitled to a resentencing hearing. We agree and remand for resentencing on that count.

21

PCSAM changed from class B to a class A felony within the charging period for the first count. Before June 10, 2010, PCSAM was a class B felony with a seriousness level of VIII. A class B felony carries a maximum penalty of 10 years, or 120 months. RCW 9A.20.021. Effective June 10, 2010, the legislature changed PCSAM from a class B to a class A felony and raised the seriousness level of promoting commercial sexual abuse of a minor from VIII to XII. ENGROSSED SUBSTITUTE S.B. 6476, 61st Leg., Reg. Sess. (Wash. 2010). This date falls within the charging period for the first count.

After the court accepted review of this issue, the parties have come to realize that due to this change in the law, Barbee's exceptional sentence as to count one exceeds the statutory maximum. Because a class B felony carries a maximum penalty of 120 months, the sentencing court may impose no more than 120 months for count 1. Barbee requests resentencing, and the State concedes that resentencing is appropriate. Accordingly, this court should reverse the Court of Appeals and remand for resentencing.

## CONCLUSION

We hold that RCW 9A.88.080 and its definitional section, RCW 9A.88.060, evince a clear legislative intent to authorize multiple punishments when a person promotes prostitution of multiple individuals. We affirm Barbee's convictions of two counts of second degree promoting prostitution. However, as for the exceptional

sentence issue, because of the elevation of PCSAM from a class B to a class A felony during the charging period for the first count, we reverse the Court of Appeals and remand for resentencing.

Owens, J.

WE CONCUR:

Madsen, C.J.

Johnson, J.

Fairhurst, J.

Stephens, J.

Wiggins, J.

González, J.

Gordon McCloud, J.

Yu, J.