FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 FEB 12 AM 11: 30

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 75554-4-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| BRETT RONALD CHASE, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: February 12, 2018 |
| | ) | |

Cox, J. — Brett Chase appeals his convictions for two counts of second degree burglary. He argues that these convictions violate double jeopardy because they are allegedly based upon "one act of theft in one location." Because the convictions are based on separate unlawful entries into separate "buildings" with the requisite intent, there is no double jeopardy violation. We affirm.

Public Storage is a facility that rents out individual storage units. The facility is completely enclosed by a 6-foot chain-link fence. Access to this facility is restricted by a gate and passcode. Only staff and customers renting storage units are able to obtain access outside of normal business hours. Customers who rent units secure those units with locks that they supply.

Chase visited Public Storage on July 24, 2015, attempting to rent a storage unit. Edward Compton, Public Storage's property manager, refused to rent to Chase because Chase had an outstanding bill. Compton did not see Chase again that day. When Compton did a security check that night, he saw that the fenced area was intact.

The next day, Compton heard drilling noises and saw two men standing outside of the fence, carrying tool cases. He recognized Chase as one of the men. Both men fled the scene.

Compton noticed that the fence was no longer intact because the wires holding the fencing to the poles had been removed. Compton then discovered that the locks on three storage units had been drilled, and there were metal shavings and a drill bit in front of storage units 520 and 521. He called the police.

Police officers immediately responded and found Chase on the embankment behind Public Storage. When Chase saw the officers, he ran across the highway and was finally arrested in a park and ride lot. In a search incident to arrest, officers found a grinding tool in Chase's pocket that matched the drill bit found in front of storage units 520 and 521. These locks were not defeated.

David Stuhr rented storage unit 382. He saw that his lock had been drilled out and destroyed and that items were missing from his unit. Police recovered some of Stuhr's missing power tools along with other tools that did not belong to him in the area behind Public Storage.

2

The State charged Chase with two counts of burglary and two counts of attempted burglary. Count 1 charged Chase with second degree burglary based on unlawfully entry of "the building of Public Storage" with the intent to commit theft. Count 2 also charged him with second degree burglary, but was based on Chase's unlawful entry into unit 382 with the intent to commit theft.

The two charges for attempted burglary were based upon attempted entry into units 520 and 521 with the intent to commit theft. These latter two charges are not at issue in this appeal, and we need not further discuss them.

The jury convicted Chase on all charged counts. The trial court sentenced him accordingly.

Chase appeals.

## DOUBLE JEOPARDY

Chase argues that his convictions for two counts of second degree burglary violate double jeopardy. Because this record shows that two units of prosecution for second degree burglary are proper under these circumstances, we disagree.

"The Fifth Amendment to the United States Constitution and article I, section 9 of the Washington Constitution provide protections against double jeopardy."[1] "Double jeopardy is violated when a person is convicted multiple times for the same offense."[2] When a defendant raises a double jeopardy challenge based on such multiple convictions, this court must first determine the

---

[1] State v. Brown, 159 Wn. App. 1, 9, 248 P.3d 518 (2010).

[2] State v. Barbee, 187 Wn.2d 375, 382, 386 P.3d 729 (2017).

unit of prosecution that the legislature intended.[3] Once the court determines the unit of prosecution, it analyzes the facts of the case to determine whether more than one unit of prosecution is present.[4]

We review de novo a double jeopardy claim.[5]

In determining the unit of prosecution, this court first looks at the plain meaning of the criminal statute in question.[6] "The meaning of a plain and unambiguous statute must be derived from the wording of the statute itself."[7] If the statute is ambiguous, the court may consider legislative history.[8] If the statute is still ambiguous, the court will apply the rule of lenity and construe any ambiguity in favor of the defendant.[9] Finally, "[w]hen engaging in statutory interpretation, the court must avoid constructions that 'yield unlikely, absurd or strained consequences."[10]

We also review de novo issues of statutory interpretation.[11]

---

[3] Id.; State v. Adel, 136 Wn.2d 629, 634, 965 P.2d 1072 (1998).

[4] Barbee, 187 Wn.2d at 383.

[5] Id. at 382; State v. Ose, 156 Wn.2d 140, 144, 124 P.3d 635 (2005).

[6] Barbee, 187 Wn.2d at 383.

[7] State v. Tili, 139 Wn.2d 107, 115, 985 P.2d 365 (1999).

[8] Id.; see Barbee, 187 Wn.2d at 383.

[9] Barbee, 187 Wn.2d at 383.

[10] Id. at 389 (quoting Kilian v. Atkinson, 147 Wn.2d 16, 21, 50 P.3d 638 (2002)).

[11] State v Brooks, 113 Wn. App. 397, 399, 53 P.3d 1048 (2002).

"A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling."[12]

For purposes of the burglary statute, the word "building" is separately defined:

> in addition to its ordinary meaning, [as] includ[ing] any dwelling, *fenced area*, . . . cargo container or any other structure used for lodging of persons or for carrying on business therein, or for the use, sale, or deposit of goods; *each unit of a building consisting of two or more units separately secured or occupied is a separate building.*[13]

In this case, the charging documents for the two second degree burglary counts specify that Chase unlawfully entered separate spaces, Public Storage and storage unit 382.[14] Each charge also alleged intent to commit theft.

Chase correctly acknowledges that the "fenced area" that completely encloses the storage facility is a building under the first part of the above emphasized definition. Likewise, he acknowledges that each storage locker is also a building under the second part of the above emphasized definition.

But he then states the issue is whether one may "apply both parts of the [definition] at the same time to one act of theft in one location . . . ."[15] He argues that these two definitions of "building" are mutually exclusive. He appears to

---

[12] RCW 9A.52.030(1).

[13] RCW 9A.04.110(5) (emphasis added).

[14] Cf. State v. Bergeron, 105 Wn.2d 1, 4, 711 P.2d 1000 (1985).

[15] Appellant's Opening Brief at 12.

argue that even though the statutory definition of "building" encompasses both the fenced area and the storage unit, the State had to choose to either prosecute him for unlawful entry of the fenced area or Stuhr's storage unit, not both. We disagree.

The first problem with this argument is his misstatement of the issue. The two counts at issue were for burglary, not theft. The former does not require commission of theft, only the *intent* to commit "a crime" coupled with unlawful entering or remaining in a building. Accordingly, the first issue for double jeopardy purposes is what did the legislature intend as the unit of prosecution for the crime of burglary.[16] The next issue is whether the facts of this case support more than one unit of prosecution.[17]

The unit of prosecution for burglary is each entry into "a building."[18] While Chase acknowledges that each entry into a building constitutes a separate unit of prosecution, he argues, without citation to authority, that the use of a semicolon to separate the two statutory definitions of building at issue in this case is intended to make those definitions mutually exclusive, requiring an election between the two.[19] Because he fails to cite any authority for this proposition, on

---

[16] Barbee, 187 Wn.2d at 382; Adel, 136 Wn.2d at 634.

[17] Barbee, 187 Wn.2d at 383.

[18] RCW 9A.52.030(1); Brooks, 113 Wn. App. at 400.

[19] See RCW 9A.04.110(5).

6

this basis alone, we could reject this argument.[20] In any event, a semicolon separates phrases or clauses that are of equal importance.[21]

Chase then argues that case law supports the conclusion that the legislature intended the two parts of the statute to be mutually exclusive. We again disagree.

Chase chiefly relies on State v. Thomson to support this argument, but his reliance is misplaced.[22]

In Thomson, Division Two of this court considered the definition of building in the last portion of RCW 9A.04.110(5), which follows the semicolon. The question in that case was whether the locked bedroom within a house constituted a separate building from the house for purposes of the first degree rape statute. That statute required felonious entry into the building where the victim was situated.[23] There, Thomson had permission to enter the house and spend the night in a guest room, but he broke into the victim's locked bedroom and raped her.[24]

The State claimed that Thomson was guilty of first degree rape because the locked bedroom was a separate building as defined in the last portion of

---

[20] See State v. Young, 89 Wn.2d 613, 625, 574 P.2d 1171, cert. denied, 439 U.S. 870, 99 S. Ct. 200, 58 L. Ed. 2d 182 (1978).

[21] State Dep't Labor & Indus. v. Slaugh, 177 Wn. App. 439, 448, 312 P.3d 676 (2013).

[22] 71 Wn. App. 634, 645, 861 P.2d 492 (1993).

[23] Id. at 636 (citing RCW 9A.44.040(1)(d)).

[24] Id.

RCW 9A.04.110(5). Specifically, it argued that the bedroom was a building because it was at least one room and was separately locked at the time of the crime. Thus, Thomson feloniously entered the "building" where the victim was located.[25]

The court disagreed. It concluded that the definition was ambiguous because "there are two possible approaches to the term 'building.'" One was that advanced by the State. The other was that a "building" included a structure where two or more rooms were occupied or intended to be occupied by different tenants separately. Either meaning encompassed buildings such as hotels and the like. But only the meaning advanced by the State encompassed a house like that wholly occupied by one person or family.

The court than examined the legislative history of the statute, which included the former Orange Code, the colloquial name of the proposed Revised Washington Criminal Code.[26] After this examination, the court concluded that the legislature intended that "the second part of RCW 9A.04.110(5) apply to buildings in which two or more rooms were occupied or intended to be occupied by different tenants separately."[27]

The court recognized that the determination of whether a building should be classified as one building or many for purposes of the burglary statute

---

[25] Id. at 642.

[26] Id. at 643.

[27] Id. at 644.

8

depends on privacy rights.[28] The court observed that in a single family dwelling, every family member living in the house has a similar privacy interest in the entire house and therefore burglarizing different bedrooms is all part of the burglary of one "building."[29] Conversely, in a multi-unit structure, "each tenant has a privacy interest in his or her room or apartment, and that interest is separate from the interests of other tenants."[30] Therefore, each room or apartment is a separate building.[31]

Since that 1993 decision, the legislature has not modified the definition of building in the statute. We assume that the legislature has acquiesced to that decision's reading of its intent.[32]

Applying the rationale of Thomson to the facts of this case, we conclude that the individual storage units at Public Storage fall within the last portion of the definition because each is "separately secured or occupied."[33] Each customer renting a unit has a separate privacy interest from any other customer. Likewise, each customer has a separate privacy interest from Public Storage, the owner of the facility entirely enclosed by the fence.

---

[28] Id. at 645.

[29] Id.

[30] Id.

[31] Id.

[32] McKinney v. State, 134 Wn.2d 388, 403, 950 P.2d 461 (1998); State v. Coe, 109 Wn.2d 832, 846, 750 P.2d 208 (1988).

[33] See Thomson, 71 Wn. App. at 644; RCW 9A.04.110(5).

Chase argues that <u>Thomson</u> also supports his contention that the legislature did not intend the first part of RCW 9A.04.110(5) to apply to a multi-unit facility such as Public Storage. He is wrong.

In <u>Thomson</u>, the entire house, including the bedroom, was occupied by the victim.[34] Thus, the court decided that the victim's privacy interest extended to the entire house, not just the room where the crime occurred. In doing so, it contrasted that situation with a multi-unit structure, where each tenant has a privacy interest in his or her room or apartment that is separate from the privacy interests of other tenants. Thus, in the latter situation, the court concluded that it made sense to characterize separate rooms as separate "buildings."

Here, Public Storage has a privacy interest in the fenced area. But the customers renting storage space have separate privacy interests in their respective storage units. Therefore, these respective areas that evidence separate privacy interests are necessarily separate buildings within the statute.

Chase further argues that post-<u>Thomson</u> cases support his claim that the State cannot proceed to prosecute him for multiple counts of burglary by relying on both definitions in RCW 9A.04.110(5). But none of those cases support his argument.

In <u>State v. Deitchler</u>, the court held that an evidence locker in a police office building was not a separate building because the police department was the sole tenant.[35] Dustin Deitchler was lawfully in the police station when he tried

---

[34] <u>Id.</u> at 646.

[35] 75 Wn. App. 134, 136-37, 876 P.2d 970 (1994).

to steal items from the evidence locker.[36] Because the evidence locker belonged to the police department and because Deitchler was lawfully in the station, he did not unlawfully enter a "building" when he broke into the locker.[37]

Deitchler is distinguishable because there was uniformity of privacy interests in the building and the evidence locker. If, as in Deitchler, Chase had unlawfully entered the fenced area and then unlawfully entered Public Storage's own building, there would be a similar unity of privacy interests. On this record, however, there is no such unity of privacy interests.

For the same reason, Chase's citation to State v. Miller is not persuasive.[38] In that case, James Miller was lawfully on the premises of the car wash when he broke into the coin boxes that were owned by, and thus "occupied" and secured by, the same entity as the car wash itself.[39]

In sum, all of the cases cited by Chase in support of his argument involve buildings with identical privacy interests, be it a home as in Thomson, a police station as in Deitchler, or a car wash as in Miller. Thus, none of them support Chase's argument that charges based on unlawful entry into the fenced area and unlawful entry into the individual storage unit violate double jeopardy.

---

[36] Id. at 135, 137 n.4.

[37] Id. at 137.

[38] 90 Wn. App. 720, 954 P.2d 925 (1998).

[39] Id. at 725, 729.

In State v. Daniel Miller, Division Two of this court addressed the burglary of a multi-unit building with distinct areas of occupancy and privacy interests.[40] Daniel Miller was convicted of two counts of burglary for breaking into a tenant's storage locker and into a locked workroom, both of which were located in the laundry room of an apartment building.[41] Miller claimed there was insufficient evidence to convict him of burglary of the tenant's storage room.[42] The court disagreed.

The court concluded that the tenant had a separate privacy interest because the storage locker had a separate padlock that secured it from other tenants or the building owners.[43] The court distinguished Deitchler because there "the police department was the only tenant with a privacy interest in both the station and the secured evidence locker" and thus, the locker was not a separate building.[44]

Unlike the locked workroom and the storage locker in the Miller case on which Chase relies, the fenced area here does not exclude those who rent individual storage units. But because Public Storage has a separate privacy interest in this fenced area that is secured from persons other than employees

---

[40] 91 Wn. App. 869, 960 P.2d 464 (1998) (We use the defendant's first and last name in the citation to avoid confusion.).

[41] Id. at 871.

[42] Id.

[43] Id. at 873.

[44] Id.

and customers renting storage units, that area is a building as defined in the first part of RCW 9A.04.110(5).

Chase further argues that the two clauses in RCW 9A.04.110(5) must be mutually exclusive to avoid absurd or strained results.[45] He argues that if his one act of theft in one location can support two burglary charges, for a "building within a building, then it logically follows that [one] act can also support three charges for a building within a building within a building," and "[t]here is no reasoned limitation" to the number of counts supported by one act in one place.[46] This argument is unpersuasive.

First, we already explained that burglary does not require a completed act of theft. Rather, the elements are unlawful entry with the requisite criminal intent.

Second, contrary to Chase's argument, the two counts at issue on appeal are not based on one act in one place. Chase committed one act of burglary by unlawful entry of the fenced area of Public Storage with the requisite criminal intent. He committed the other act of burglary by unlawful entry of the storage locker belonging to David Stuhr with the requisite criminal intent. On this record, the two are not the same.

Finally, because the language contained in the statute defining building is not ambiguous, the rule of lenity does not apply.[47] We reject his argument to the contrary.

---

[45] See Barbee, 187 Wn.2d at 389.

[46] Appellant's Opening Brief at 19-20.

[47] Barbee, 187 Wn.2d at 383; Tili, 139 Wn.2d at 115.

In his reply brief Chase argues that the State improperly relied on evidence that he broke into Stuhr's storage unit to support both counts of burglary. He argues that the jury was never asked to consider whether he cut through the fence. We decline to consider this new argument because it was not timely raised.

We affirm the judgment and sentence.

_Cox, J._

WE CONCUR:

_Mann, J._                    _Appelwick, J._