# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51959-3-II |
| Respondent, | |
| v. | |
| JONATHAN JAYMES WALLIN, | UNPUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Jonathan Wallin appeals his convictions of two counts of second degree assault with firearm enhancements, one count of second degree malicious mischief with a firearm enhancement, one count of second degree unlawful possession of a firearm, one count of possession of a controlled substance, and two counts of witness tampering. Wallin asks this court to reverse his assault convictions, his malicious mischief conviction, his unlawful possession of a firearm conviction, and his witness tampering convictions and remand for a new trial because the trial court (1) violated his federal Sixth Amendment right to confrontation when it admitted Ancy Blackburn's out-of-court statements and (2) abused its discretion when it excluded evidence of Jace Blackburn's and Lloyd Nunez's gang affiliations. He also asks this court to reverse and dismiss his possession of a controlled substance conviction because (1) the State failed to present sufficient evidence to support the conviction and (2) the controlled substance definitional

instruction was erroneous because it did not accurately identify the substance he was charged with possessing. Finally, Wallin argues that his two convictions for witness tampering violated the prohibition on double jeopardy.

We affirm the convictions. We hold that (1) Ancy's[1] statements were admissible under the doctrine of forfeiture by wrongdoing and thus their admission did not violate the Sixth Amendment right to confrontation, (2) Wallin waived the error regarding exclusion of evidence of Jace's and Nunez's gang affiliations because he affirmatively said he had no objection to the trial court's striking of the evidence, (3) the State presented sufficient evidence that Wallin possessed a controlled substance, (4) Wallin failed to object to the controlled substances definitional instruction below and therefore waived his claim, and (5) the two convictions for witness tampering represent discrete units of prosecution and do not violate double jeopardy.

FACTS

I. BACKGROUND FACTS

On January 6, 2018, Wallin and Ancy, Wallin's girlfriend at the time, were at Wallin's home when Ancy received a Facebook message from her cousin, Jace. Jace asked Ancy if she wanted to "hang out" with him. 2 Verbatim Report of Proceedings (VRP) at 287. Wallin and Jace had a strained relationship. When Wallin saw that Ancy was messaging Jace on her cell phone, he took Ancy's phone from her and told her he did not want her texting anyone. Wallin then began to send messages to Jace from Ancy's phone, pretending that he was Ancy and asking Jace to come to Wallin's house to pick Ancy up. Jace initially believed that Ancy was indeed asking to get

---

[1] Because Ancy Blackburn and Jace Blackburn share the same last name, we use their first names for clarity.

picked up, and he asked his friend Nunez to drive him to Wallin's residence. However, in retrospect, Jace had realized while continuing to message "Ancy" that he was actually communicating with Wallin.

According to Wallin, he was afraid of Jace. Wallin claimed that Jace and Nunez violently attacked him in the summer of 2017. At that time, Wallin was dating Jace's older sister, Helena Lemieux. On that occasion, Wallin was in the driver's seat of Lemieux's car when Jace walked up to it, opened the door, and pulled out a can of mace and a stun gun. Wallin recalled that Jace sprayed him in the face with mace and stunned him while Nunez stood behind Jace holding a 10-inch hunting blade. Lemieux's version of this event differed. Lemieux stated that Nunez was not present during this incident and confirmed that Jace sprayed Wallin in the face with mace but recalled that Jace did not have a stun gun.

When Jace and Nunez pulled into Wallin's driveway on January 6, Wallin peered out through his curtain and then went outside with a shotgun and proceeded to shoot at Nunez's car. When Wallin started shooting, Nunez slammed the gas pedal and drove into a ditch or into bushes. Wallin continued firing the shotgun at Jace and Nunez. Jace and Nunez fled the vehicle out of the driver's side door, and Nunez ran towards the woods while Jace ran toward a nearby mill. At the mill, Jace was able to ask someone to call police. Before police arrived at Wallin's residence, Wallin had fled the scene in Ancy's car.

Officer Ryan Onasch with the Quinalt Tribal Police arrived at the scene. Park Ranger Joseph Turgyan, Deputy Brian Rydman, and Lieutenant Brad Johansson also responded.

Rydman spoke with Ancy and he took a written statement from her. Ancy informed Rydman that she had been staying with Wallin at Wallin's grandmother's house for several days.

3

She informed Rydman that she was lying on the couch when Wallin retrieved his shotgun, walked toward the front door, opened the door a crack, pointed his shotgun outside the door, and opened fire at a car parked in the driveway. Wallin then "did something with the gun," but she was not certain what he did. 1 VRP at 153. She said Wallin then left in her car. At that time, she told Rydman that she did not know who was in the car that pulled up to Wallin's home and that Wallin had been texting someone prior to the event, but she was not sure who that individual was.

Johansson spoke with Ancy that same day and reviewed the Facebook message conversation. Johansson suspected that Ancy had not sent the messages to Jace and wanted to confirm his suspicions, and he also suspected that when Ancy gave her first statement, she was under the influence of some substance.

Following Johansson's instructions, Sergeant Robert Wilson contacted Ancy the following night to obtain a second statement. Ancy explained that she had an on-and-off dating relationship with Wallin and in the days leading up to the event on January 6, 2018, the two had been in the process of resuming their relationship. Ancy confirmed that Wallin had taken her phone from her and pretended to be her in order to get Jace to come to the house. Wallin had specifically informed Ancy that he wanted Jace to come to the house because he was trying to "beat him up." 2 VRP at 288. As Wilson was recording Ancy's statement, he noticed that Ancy was receiving numerous notifications on her phone as if someone was messaging her. Wilson asked whether the messages she was receiving were from Wallin, who was at large at the time. She confirmed that the messages were from Wallin, and she permitted Wilson to scroll through her phone and photograph the conversation.

4

On January 13, Rydman went back to Wallin's home to execute an arrest warrant. Wallin was found in the attic and arrested. Shotgun shells were discovered in Wallin's home, along with a purple container that had what appeared to be psilocybin mushrooms inside.

In the first information, filed on February 6, 2018, the State charged Wallin with two counts of second degree assault, one count of second degree malicious mischief, and one count of second degree unlawful possession of a firearm.

While attempting to serve subpoenas to witnesses in the case, Deputy Jordan Stullick discovered that Wallin had been making calls to witnesses from the jailhouse phone. Wallin made two separate calls to Ancy, one in January and one on March 22, 2018. In these calls, Wallin implored Ancy to retract her statements to police officers and asked her not to come to court to testify because if she did not testify, the charges against him would be dismissed. The State then amended the information and added two counts of witness tampering to Wallin's charges.

The State filed a second amended information on April 25, 2018 before trial to include a count of violation of the uniform controlled substances act – possession of a controlled substance. The State identified the controlled substance as psilocybin.

Trial commenced on May 8, 2018. After voir dire and outside the presence of the jury, the trial court held a hearing on the State's motion to admit Ancy's out-of-court statements. Ancy was personally served with a subpoena when trial was originally set to begin on April 3, 2018, but after the State discovered Wallin made phone calls to Ancy and filed an amended information, trial was continued. All subsequent attempts to serve Ancy with a subpoena failed. The sheriff's office had been attempting to locate Ancy for almost 30 days but to no avail. The State reported that Ancy

5

did not appear at court on April 3, the date listed on the subpoena that was successfully served, and no one had seen Ancy that morning for the first day of trial.

The State argued that due to Ancy's absence, the statements she made to police officers on January 6, 2018 and January 7, 2018 should be admitted pursuant to the doctrine of forfeiture by wrongdoing. The court listened to a recording of the March 22, 2018 call that Wallin placed to Ancy from jail. Wallin did not object to admission of the phone recording, but he objected to the admission of Ancy's statements because, he argued, it appeared Ancy had her own reasons for not wanting to testify that could not be fairly attributed to anything he did.

In this call, Wallin asked Ancy not to testify at his trial, and Ancy initially answered, "I didn't really want to go anyways." Ex. 3 at 0 min., 42 sec. through 1 min., 07 sec. Wallin continued to implore Ancy not to testify, saying that if she does not testify, he will be "good to go." *Id.* at 3 min., 23sec. through 3 min., 25 sec. After exhibiting some hesitancy, Ancy responded affirmatively and agreed not to testify in response to Wallin's request and his promise that he will "make it alright when [he] get[s] out." *Id.* at 4 min., 52 sec. through 4 min., 55 sec. Following the parties' argument, the trial court ruled that Ancy's statements were admissible:

> Ms. Blackburn did not show up on April 3rd when this case was previously scheduled for trial, the fact that she's not here today, the fact that the sheriff's office has been trying to serve her since April 11th and has not been able to locate her, indicates that she has willfully absented herself. And based on what Mr. Wallin said to her during the course of this March 22nd, 2018 phone call, it was foreseeable that the consequences of his actions would be that she would be unavailable at trial and that he - and therefore, under the doctrine of forfeiture, has forfeited his rights to confront her as a witness. And so, I do believe that the evidence demonstrates by clear, cogent, and convincing evidence that Mr. Wallin's conduct has prevented Ancy Blackburn from being available today as a witness.

1 VRP at 31-32. Accordingly, the court admitted the statement Ancy made to Rydman shortly after the incident and the statement Ancy made to Wilson the following day.

## II. TRIAL

At trial, the witnesses testified consistently with the facts as stated above. During questioning by Wallin, Nunez testified that he knew Jace was formerly associated with the Sureños gang and that he, Nunez, had been associated with Sureños previously as well. Later, when Wallin began to testify regarding his prior relationship with Jace and the interaction that took place in the summer of 2017, the State objected based on relevance. The court asked the jury to step out and requested an offer of proof from the defense. Wallin described the alleged assault by Jace and Nunez and explained that he knew Jace by reputation as a member of the Sureños. Wallin stated that he had seen Jace's profile picture on Facebook in which he wore the Sureños color and was "throwing up gang signs." 2 VRP at 304. When asked where he learned of Jace's gang membership, Wallin explained that he had heard this from Lemieux and Ancy. The defense theory was that Jace and Nunez specifically went to Wallin's home to cause harm to Wallin.

When the trial court reconvened, it ruled that while it initially admitted the evidence regarding Nunez's and Jace's gang affiliation because it believed the evidence was relevant to the self-defense claim, the offer of proof that Wallin made regarding the admission of additional gang evidence was insufficient. Additionally, the trial court ruled that the evidence was not relevant. The trial court then proposed instructing the jury to disregard *all* evidence relating to gang membership and offered the parties an opportunity to be heard on the matter. Both parties stated that they had no objection to the trial court instructing the jury to disregard all evidence of gang affiliation. The trial court then asked a second time whether either party had an objection to its instruction to the jury to disregard all evidence of gang membership and again, both parties affirmatively said that they did not.

A forensic scientist testified regarding the mushrooms found in Wallin's possession.  The mushrooms "contained psilocyn or psilocybin or both of those materials."  *Id.* at 259.  Psilocyn may accurately be described as a byproduct or derivative of psilocybin, and psilocybin converts to psilocyn over time.  Both are controlled substances, but the forensic scientist did not determine which of those or both were in the mushrooms seized from Wallin.  Jury instruction 19 provided that psilocybin and psilocyn are controlled substances.  Wallin freely admitted that he had psilocybin mushrooms in his house.

The jury found Wallin guilty of all the charged offenses.  The trial court sentenced Wallin to 120 months confinement on all the charges.  Wallin appeals.

DISCUSSION

I. FORFEITURE BY WRONGDOING

Wallin argues that he did not forfeit his right to confront the witnesses against him when he made the two calls to Ancy because although he asked Ancy not to testify during these calls, he did not procure her absence by threat or intimidation.  In addition, Wallin claims there were other compelling reasons that Ancy may not have testified that have nothing to do with his request.  Wallin explains that perhaps Ancy did not appear at court because she did not want to testify in contradiction of her cousin, Jace.  Or perhaps, he suggests, Ancy did not appear because she made her first statement under the influence of an intoxicant and "she was reticent to testify to the events contained in those statements under oath."  Br. of Appellant at 18.  Accordingly, Wallin claims that the trial court violated the Sixth Amendment when it admitted Ancy's out-of-court statements because Wallin's wrongdoing was not proven by clear, cogent, and convincing evidence.

8

We hold that the trial court is not required to find that a criminal defendant procured a witness's absence by threat of violence in order to admit out-of-court statements under the doctrine of forfeiture by wrongdoing. It is enough to show, by clear, cogent, and convincing evidence that it is highly probable that the defendant intentionally caused the witness's absence.

Under the Sixth Amendment, criminal defendants have the right to confront the witnesses against them. *State v. Dobbs*, 180 Wn.2d 1, 10, 320 P.3d 705 (2014). But when the criminal defendant acts to procure the witness's unavailability, the criminal defendant loses the right of confrontation. *Id.* at 10-11. This doctrine is known as forfeiture by wrongdoing and was first adopted by our Supreme Court in *State v. Mason*, 160 Wn.2d 910, 925, 162 P.3d 396 (2007).

The potential violation of the right of confrontation implicates a constitutional issue that we review de novo. *Dobbs*, 180 Wn.2d at 10. We review a challenge to a trial court's findings of fact for substantial evidence. *Id*. A trial court's decisions on admissibility of evidence are reviewed for an abuse of discretion. *Id*.

To determine whether statements made by an unavailable witness are nevertheless admissible under the forfeiture by wrongdoing doctrine, "the trial court must decide whether the witness has been made unavailable by the wrongdoing of the accused based upon evidence that is clear, cogent, and convincing." *Mason*, 160 Wn.2d at 927. Because the standard of proof is clear, cogent, and convincing evidence, the fact at issue, here whether Wallin intentionally caused Ancy's absence from trial, must be shown to be "'highly probable.'" *Dobbs*, 180 Wn.2d at 11 (quoting *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973)).

The trial court need not establish that the defendant's conduct caused the witness to be unavailable beyond a reasonable doubt. *Id.* at 16. Therefore, "[a] court does not need to rule out

9

all possibilities for a witness's absence; it needs to find only that it is highly probable that the defendant intentionally caused it." *Id.*

No prior Washington court has ever held that in order to prove a witness's absence was caused by the defendant's wrongdoing, the evidence must support a finding that the defendant made a threat or committed some violent act in order to ensure a witness's unavailability. In *State v. Hernandez*, 192 Wn. App. 673, 686, 368 P.3d 500 (2016), this court held that statements were admissible under the forfeiture by wrongdoing doctrine when the criminal defendant used coded language to conspire with the witness's mother to take the witness, a child, out of the country so the child was unavailable to testify. There was no evidence of a threat of violence employed to procure the witness's absence in that case. *Id.*

Rather, the dispositive inquiry, as identified in *Dobbs*, is whether substantial evidence shows that it is highly probable that a defendant intentionally caused a victim's absence. 180 Wn.2d at 16. Here, there was clear, cogent, and convincing evidence that Wallin acted intentionally to cause Ancy's absence. The trial court need not rule out all possibilities for Ancy's absence. Ancy initially told Wallin in the March phone call that she "didn't really want to go [to court] anyways," but Wallin implored Ancy multiple times not to testify throughout this call. Ex. 3 at 1 min., 06 sec. through 1 min., 07 sec. Ancy eventually acquiesced and stated that she would not testify at his trial. Ancy's affirmations that she would not testify were made in direct response to Wallin's repeated requests. Though Wallin did not use threatening language to convince Ancy not to testify, he cannot now complain of his inability to confront this witness following his multiple, ardent attempts to ensure her absence. Consequently, Ancy's out-of-court statements to the officers were properly admitted and there was no constitutional violation.

II. EXCLUSION OF EVIDENCE OF NUNEZ'S AND JACE'S GANG AFFILIATION

Wallin challenges the trial court's decision to exclude all evidence of Nunez's and Jace's gang affiliations because he claims that the evidence was relevant both as substantive evidence to support his self-defense argument and as impeachment evidence. Wallin further asserts that the evidence was admissible because the State opened the door to such evidence when it elicited testimony from Jace regarding his gang membership during direct examination.

A trial court's evidentiary rulings are reviewed for an abuse of discretion. *State v. Otton*, 185 Wn.2d 673, 689, 374 P.3d 1108 (2016). A trial court abuses its discretion if its decision is unreasonable or is based on untenable grounds. *State v. Arredondo*, 188 Wn.2d 244, 256, 394 P.3d 348 (2017).

We decline to reach this issue because Wallin waived the error below. Waiver is "'an intentional relinquishment or abandonment of a known right or privilege.'" *State v. Harris*, 154 Wn. App. 87, 95, 224 P.3d 830 (2010) (internal quotation marks omitted) (quoting *State v. Riley*, 19 Wn. App. 289, 294, 576 P.2d 1311 (1978)). In *State v. Asaeli*, we declined to review the defendants' claim regarding the trial court's decision to admit witness testimony because the defendants waived that claim when they failed to object below. 150 Wn. App. 543, 587, 208 P.3d 1136 (2009). The defendants had initially filed a motion in limine seeking to prevent the trial court from admitting that testimony. *Id*. In denying the motion, the trial court indicated that its decision was preliminary and tentative, and both parties were permitted to raise the issue again during trial. *Id*. Because no one raised an objection during trial, we deemed the claim of error waived. *Id*.

Here, when the trial court told the parties that it would instruct the jury to disregard all prior evidence regarding Nunez's and Jace's gang affiliations, it twice gave both parties an

opportunity to be heard on the matter. On the first occasion, Wallin stated that he had no objection to the trial court's instruction to exclude the evidence. On the second occasion, Wallin again affirmatively stated he had no objection. Therefore, Wallin has waived this claim of error.

III. SUFFICIENCY OF THE EVIDENCE OF POSSESSION OF A CONTROLLED SUBSTANCE

Wallin was charged with possession of a controlled substance, and the controlled substance was alleged to be psilocybin. Wallin argues that because the State's expert was unable to specify whether the substance Wallin possessed was psilocyn or psilocybin, and the State charged him with possession of only psilocybin, the evidence at trial was insufficient to prove that he possessed psilocybin beyond a reasonable doubt. We hold that the evidence is sufficient to prove that Wallin possessed psilocybin.

To determine whether the evidence is sufficient to sustain a conviction, we consider "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Scanlan*, 193 Wn.2d 753, 770, 445 P.3d 960 (2019) (internal quotation marks omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (plurality opinion)), *cert. denied*, 2020 WL 129776. A criminal defendant who raises a sufficiency of the evidence challenge admits the truth of the State's evidence and "'all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant.'" *Id.* (quoting *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)).

Here, assuming the truth of the State's evidence and drawing all reasonable inferences in favor of the State, the evidence is sufficient to find Wallin guilty of possession of psilocybin mushrooms. Although the State's expert could not specify whether the mushrooms were

exclusively psilocybin, he did testify that they were psilocybin or psilocyn or both and that psilocybin degrades into psilocyn over time. In addition, Wallin was asked, "[Y]ou also had psilocybin mushrooms in your house, didn't you?" 2 VRP at 325. He responded, "I did." *Id*. Therefore, Wallin's claim that the expert's testimony raised some doubt about the identity of the controlled substance fails to undermine the sufficiency of the evidence presented by the State.

## IV. DEFINITION OF CONTROLLED SUBSTANCES INSTRUCTION

Wallin challenges jury instruction 19, which stated that both psilocybin and psilocyn are controlled substances, because he was charged with possession of only psilocybin. He claims that given the expert's testimony, the jury could have found him guilty of possession of psilocyn only, but that he was never charged with this crime. We hold that because Wallin failed to object to the instruction below, he has waived his right to challenge this instruction on appeal.

"CrR 6.15(c) requires that timely and well stated objections be made to instructions given or refused 'in order that the trial court may have the opportunity to correct any error.'" *State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988) (internal quotation marks omitted) (quoting *Seattle v. Rainwater*, 86 Wn.2d 567, 571, 546 P.2d 450 (1976)). The "'law of the case' doctrine" provides that "'before error can be claimed on the basis of a jury instruction given by the trial court, an appellant must first show that an exception was taken to that instruction.'" *State v. Johnson*, 188 Wn.2d 742, 761, 399 P.3d 507 (2017) (emphasis omitted) (internal quotation marks omitted) (quoting *State v. Salas*, 127 Wn.2d 173, 181, 897 P.2d 1246 (1995)). Failure to object to an instruction before it is published to the jury thereafter waives any objection on appeal. *State v. Hickman*, 135 Wn.2d 97, 105, 954 P.2d 900 (1998) ("the parties must object to jury instructions . . . on penalty of forfeiture of such objection").

Here, the trial court asked Wallin whether he had any objection to the proposed instructions. Wallin responded that he did not. Wallin has therefore waived his objection to jury instruction 19, and we decline to review this claim.

## V.  DOUBLE JEOPARDY

Wallin claims that his two separate counts of witness tampering violate double jeopardy because both of the charges were based on phone calls to Ancy that shared the same criminal purpose—discouraging her from appearing in court. Wallin claims multiple phone calls to one individual in the context of witness tampering constitute a single unit of prosecution following the court's decision in *State v. Hall*, 168 Wn.2d 726, 230 P.3d 1048 (2010).

We hold that Wallin's two counts of witness tampering do not violate double jeopardy because every instance of witness tampering gives rise to a separate unit of prosecution under RCW 9A.72.120(3).

Multiple convictions for the same offense violate double jeopardy. *State v. Barbee*, 187 Wn.2d 375, 382, 386 P.3d 729 (2017). When two convictions arise under the same statute, to determine whether double jeopardy has been violated, the court considers what "'unit of prosecution'" the legislature intended as the punishable act under the specific criminal statute. *Id.* (internal quotation marks omitted) (quoting *State v. Adel*, 136 Wn.2d 629, 632, 965 P.2d 1072 (1998)). A defendant cannot be convicted more than once under a statute if the defendant commits only a single unit of a given crime. *Id*.

Here, RCW 9A.72.120(3) provides, "For purposes of this section, each instance of an attempt to tamper with a witness constitutes a separate offense." Consequently, the relevant statute provides that every attempt to tamper with a witness is a single unit of prosecution. *See Barbee*,

No. 51959-3-II

187 Wn.2d at 382. Wallin attempted to convince Ancy not to testify at his trial in two separate phone calls. These two phone calls constitute two discrete attempts to tamper with a witness. Wallin's two convictions for witness tampering do not violate double jeopardy.

CONCLUSION

We hold that (1) Wallin's Sixth Amendment right to confront the witnesses against him was not violated when the trial court admitted Ancy's out-of-court statements under the doctrine of forfeiture by wrongdoing, (2) Wallin waived his claim that the trial court abused its discretion in excluding evidence of Jace's and Nunez's gang affiliations, (3) the evidence was sufficient to prove that Wallin possessed psilocybin, (4) Wallin failed to preserve his challenge to the controlled substances definitional instruction by failing to object below, and (5) his two convictions for witness tampering do not violate double jeopardy. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.

15